# Wytheville.

## OSBORNE AND OTHERS V. BIG STONE GAP COLLIERY CO.

### JUNE 9, 1898.

1. LIEN FOR SUPPLIES—*Running Account—When Due.*—A running account, in the absence of evidence to the contrary, is considered as falling due at the date of its last item ; and a lien for supplies may be recorded within ninety days from the date of the last item.

2. APPEAL AND ERROR—*Exceptions for First Time—Error Apparent on Record—When too Late to Object—Lien for Supplies.*—Although objection may be made in this court for the first time to the report of a commissioner allowing an account which is the basis of a lien for supplies, for errors apparent on the face of the report, it cannot avail if the objection could have been made and cured by the introduction of evidence in the court below. It is too late after the lien has been presented in the court below, accepted by the commissioner charged with taking an account of liens, duly reported, and the report confirmed without objection.

3. LIENS—*Displacement by Receiver's Certificates—Notice.*—The lien of a deed of trust cannot be displaced by the subsequent issue by a court of chancery of receiver's certificates without notice to the creditor secured.

4. CHANCERY PRACTICE—*Receiver's Certificates—Power to Issue—Notice to Parties to be Affected.*—Courts of chancery may, in a proper case, issue receiver's certificates, which shall constitute a paramount charge upon the franchises, earnings, and property of a corporation under their control ; but it is a power which should be exercised with the utmost caution, prudence, and reserve, and never without giving those whose interests are to be affected the opportunity to be heard in opposition to it. Prior liens are unaffected by receiver's certificates issued without notice.

5. CHANCERY PRACTICE—*Parties—Trustee and Beneficiary.*—The trustee in a deed of trust does not represent the creditor secured in proceedings in the courts of this State affecting the trust property.

6. APPEAL AND ERROR—*Rule IX. of Court—What Error may be Assigned.*—Under Rule IX. of this court an appellee may assign as error a decision

adverse to his interest in the decree appealed from, although he failed to appeal when he might have done so from a former decree against him in the same suit, determining the same question.

7. RECEIVER'S CERTIFICATES—*Rights of Holder—Subsequent Issue of Other Certificates Without Notice.*—The *bona fide* holder of a receiver's certificate, duly issued to him under the orders of a court of chancery for debts incurred by the receiver, which certificate has been reported to the court, and, without objection, allowed, acquires a vested right to the payment of his debt in a certain order of which he cannot be deprived except by his own act, or by due process of law. He is not affected by the subsequent issue of other certificates of which he has no notice.

Appeal from two decrees of the Corporation Court of the city of Bristol pronounced February 20, 1896, and August 3, 1896, in two chancery suits heard together, one under the style of *Big Stone Gap Colliery Co.* v. *Bank of Big Stone Gap and Others*, and the other under the style of *Willis* v. *Big Stone Gap Colliery Co. and Others*, in each of which the appellees were defendants.

*Reversed in part.*

The opinion states the case.

*R. T. Irvine*, for the appellants.

*Fulton & McDowell*, for the appellees.

KEITH, P., delivered the opinion of the court.

This is an appeal from two decrees of the Corporation Court of the city of Bristol in the causes heard together, styled *Big Stone Gap Colliery Co.* v. *The Bank of Big Stone Gap et als.*, and *J. M. Willis* v. *Big Stone Gap Colliery Co. et als.*, removed from the Circuit Court of Wise county, and the facts disclosed are as follows:

In October, 1892, J. H. Allen entered into an agreement

with J. H. Haskell, agent, whereby Allen leased from Haskell 1,000 acres of coal land in Wise county. Haskell was to secure a right of way for a railroad from the coal mines to a connection with the L. & N. railroad. Allen was to begin construction of the railroad within ninety days, complete it in six months, and to mine not less than 500 tons of coal or coke per day, for each working day; the lease to be forfeited if work on the railroad was not begun within three months, or was not completed within nine months.

Prior to November 23, 1892, Allen secured a charter from the Circuit Court of Wise county for a corporation styled the Big Stone Gap Colliery Co., of which he was the president, and practically the owner of all the stock, issuing one share each to four other persons, who, with himself, composed the first board of directors of this company. He then assigned the Haskell lease to this corporation, and issued the remaining stock authorized by the charter to himself, or upon his own order, as the consideration of the transfer of the Haskell lease, and proceeded to do business in the name of the corporation. W. D. Osborne & Co. furnished supplies to this company, and on March 8, 1893, filed their supply lien against it for the amount of $1,438.72. Numerous other claims against this company, of laborers, mechanics, and supply men, were filed about the same period, and J. M. Willis, who held a lien for supplies, instituted his suit in equity in the Circuit Court of Wise county to enforce it. At the April term a decree was entered for his claim, and an account of liens and their priorities, and a convention of creditors, ordered.

On February 21, 1893, the defendant company, by its president and secretary, executed a deed to H. C. McDowell, trustee, conveying all of its property, etc., to secure certain sums due to the Bank of Big Stone Gap and others; and soon thereafter McDowell advertised that on May 23, 1893, by virtue of the said deed, he would sell at public auction all the rights, franchises, and property of the company for the benefit of all its creditors whose debts existed on February 21, 1893.

Opinion.

On May 19, 1893, the company as a corporation, and certain stockholders of the company, presented a bill in equity to the judge of the Circuit Court of Wise county, in vacation, stating the foregoing facts, the impending sale of the property under the trust deed; the pendency of the J. M. Willis suit, and the decree therein for an account of liens; the great value of the lease of the Haskell tract, and the improvements placed thereon; the personal property accumulated by the company, and its embarrassment to the point of insolvency.

An injunction was asked against the sale under the deed of trust upon the ground that the company's mines had been examined by experts and pronounced of great value, but in order to operate them successfully a considerable expenditure would be necessary in completing their branch line of railroad, and in building at least fifty coke ovens. Upon this state of the company's affairs the court was asked to appoint a receiver, with authority to issue certificates for an amount sufficient to complete the railroad, and build the coke ovens, and make other improvements necessary to put the plant into successful operation, and that they be declared a first lien on all the franchises, rights, and property of the company, complainants averring that, if their prayer be granted, they will at once dispose of the certificates at par, and raise the necessary funds to complete improvements contemplated.

To sustain the prayer of the bill affidavits were filed to the effect that by a judicious expenditure of money the plant could be made a paying investment.

To this bill the trustee, H. C. McDowell, and the creditors named in the trust deed of February 21, 1893, the laborers and supply men, who had filed their liens under the statute, and the other creditors of the company whose names are unknown, are made parties defendant, and without notice to any of them, and without the appearance of any of them, except McDowell, trustee, who, so far as the decree shows, did nothing more than appear, the judge of the Circuit Court of Wise

county, on May 19, 1893, made a decree in accordance with the prayer of the bill, enjoining the impending sale, appointing Gray receiver of all the assets of the company, and directing him to issue receiver's certificates to an amount not to exceed $35,000, which should be a first lien on all the property and franchises of the company, and requiring him, under the direction of the court, to complete and operate the plant.

June 17, 1893, Receiver Gray filed a report. In it he estimates that $27,865 would be required to bring the mines to a capacity of 300 tons output per day, and to complete the fifty coke ovens within ninety days, and he reports an abandonment of work on the coke ovens, the mining of coal at a loss, and that $10,000 remained unpaid on the receiver's certificates out of the $24,000 contracted for by Millett, Warner and Sanner.

The case having been removed to the Corporation Court of Bristol, that court on the 12th of June, 1894, directed Receiver Gray to satisfy the labor lien claimants by paying twenty-five per cent. of their claims per month for the four months following, and ordered him to complete the coke ovens as speedily as possible.

Commissioner Skeen, to whom the suit of *Willis* v. *Big Stone Gap Colliery Co.* had been referred, had filed his report to the Circuit Court of Wise county on August 3, 1893, in which he reported the total debts against the company prior to the receivership to be about $20,500, and that, in order of priority, the labor and mechanic lien debts on specific houses came first, and that supply lienors to the amount of about $2,500, which included the lien of the appellants for $1,438.72, came next. He, without including the lease from Haskell, agent, reports the company's "improvements, consisting of house, mining equipment, mine openings, &c., worth from $12,000 to $15,000;" so that, according to this report, the liens upon the company's property when the receiver was appointed, May 19, 1893, having priority over appellants, aggregated about $4,600,

and the amount that stood on equal footing with their lien, was about $1,000.

Without any action having been taken on this report, to which the defendant company made no exception, the Corporation Court of the city of Bristol, by its decree of December 3, 1894, recommitted the causes of the *Big Stone Gap Colliery Co.* v. *Bank of Big Stone Gap*, and *Willis, &c.* v. *Big Stone Gap Colliery Co. et als.*, to Commissioner Skeen to report upon the number and amount of the receiver's certificates issued, and what priority the certificates should hold with reference to other liens and debts of the company; the unsecured indebtedness of Receiver Gray, and the order of priority of labor debts, &c.

In response to this decree Commissioner Skeen made his second report, filed January 7, 1895, in which he sets out the number and amounts of receiver's certificates, the assets and liabilities of Gray, receiver, the amount of labor debts unpaid, and the order and priorities of the various liens, as follows : 1st, The unpaid labor debts; 2d, The receiver's unsecured debts; 3d, The receiver's certificates; 4th, The remaining debts of the corporation, as reported by Commissioner Skeen in his report in the J. M. Willis suit, August 3, 1893.

Numerous exceptions were filed to this report, among them one by appellant, because it made the receiver's debts and certificates a lien prior to that of the creditors of the defendant company who were secured by supply liens.

On March 22, 1895, a decree was rendered by consent as to parties represented by counsel (but not as to appellants), whereby Gray's resignation as receiver was accepted, and P. J. Millett, the president of the defendant company, was appointed in his stead ; a new issue of receiver's certificates to the amount of $12,000 was ordered, and adjudged to be a lien paramount to the first series of receiver's certificates, and to all other debts and liens against the property of the defendant company. The receiver was ordered to complete the coke

ovens, and to operate the plant for twelve months from the time he commenced to ship coke; and if, at the end of that time, or sooner, if the court deemed it advisable, it became apparent that the plant was not capable of earning a reasonable profit it should be sold.

In the event of a sale, the order of priorities of debts was fixed as follows: (1), Unpaid operating expenses; (2), The new issue of receiver's certificates; (3), Balance on the labor liens; (4), The unsecured debts of Gray, receiver, and the first issue of receiver's certificates ratably; (5), The debts of the defendant company as reported.

A number of reports were made by Receiver Millett showing the unsatisfactory condition of the property, and finally, on January 5, 1896, he reported, that " while there is yet considerable work to be done before the plant will be fully completed, your receiver can see no available funds in sight by which to do the necessary work; " and, on February 20, 1896, the court decreed that the receivership be terminated, and the property sold. The report of January 7, 1895, was confirmed, except in so far as modified by former decrees, and by the decree then entered. The application of the proceeds of sale is set out in the decree as follows: (1), The unpaid operating expenses, amounting to several thousand dollars; (2), Second issue of receiver's certificates, $12,000; (3), Unpaid labor claims; (4), First issue of receiver's certificates, $24,000, and the unsecured debts of Gray, receiver, ratably; and (5), Debts against the defendant company as reported August 3, 1893.

The commissioners appointed under this decree, sold the plant as a whole, at public auction, April 4, 1896, to E. G. Oates & Co. at the price of $26,000. A resale was ordered by decree of June 2, 1896, at the upset bid of $31,200, and H. J. Ayers appointed commissioner to audit and report the accounts of P. J. Millett, receiver, to and including the day of sale. Ayers filed his report July 23, 1896, from which it appears that on the day of sale the holders of the second issue of

receiver's certificates were the N. Y. Mining Manfg. Co., successor to Haskell, agent, $2,000; P. J. Millett, $4,000; E. G. Oates & Co., $6,000, and that the expenses incurred by Millett, receiver, to the day of sale, amount to $14,275.53. A second sale of the plant took place July 18, 1896, and E. G. Oates & Co. again became the purchasers at the sum of $31,210. This sale was confirmed by a decree entered August 3, 1896, and the receiver was discharged.

As a result of the proceedings in these causes the whole of the purchase-money for the property purchased by Oates & Co. is consumed in the payment of costs, Receiver Millet's operating expenses and certificates issued by him under the decree of March, 1895, and the unsecured debts of Receiver Gray and certificates issued by him under the decree of May 19, 1893, so that appellants and others holding liens on the property prior to the receivership receive nothing whatever upon their claim.

Appellants are non-residents of Virginia. They had no notice of the intention to apply for a receiver and for authority to issue receiver's certificates, and were not represented by counsel when the receiver was appointed in the first instance. They were not in any way notified of the proceedings until the completion of an order of publication late in November, 1893, after the receiver had been authorized to issue $35,000 of certificates, and had in fact issued a large part of that amount. They in no way appear in the causes till February, 1895, when they, by counsel, filed an exception to the report of January 7, 1895.

It is from the decrees of February 20 and August 3, 1896, that this appeal is taken.

Osborne & Co. claim a lien for supplies furnished the Colliery Company, as shown by an account beginning November 23, 1892, and ending February 14, 1893, amounting to $1,633, reduced by payments to $1,438.72, for which sum they perfected their lien before the county clerk of Wise county on

the 18th of March, 1893.   This lien was reported in the Circuit Court without objection, and in order of priority came next after the labor and mechanic liens on specific houses, which amounted to $4,600.

Appellees now contend that, although no exception was taken in the court below to the report of Commissioner Skeen, which recognized the lien of appellants, they are not precluded from making the objection in this court because the error in allowing the claim is apparent on the face of the report, (1) because the lien as to certain items was not perfected within ninety days, as prescribed by the statute; and (2) because the account is not of such a character as will entitle appellants to claim a lien for supplies.

It is true that a number of items were furnished more than ninety days before the account was filed in the clerk's office of Wise county, but it was a running account, and, where nothing to the contrary appears, is to be considered as falling due at the date of its last item.   *Richlands, &c. Co.* v. *Hiltebeitel,* 92 Va. 91.

As to the second contention, we cannot hold as matter of law that the items claimed could not have been brought by proof within the statute under which the lien is asserted.   As we have seen, the lien was presented in the Circuit Court, was accepted by the commissioner, duly reported, and the report was confirmed without objection being taken.   While it is true in such cases that objection may be first made in this court for errors apparent on the face of the report, it cannot avail if the objection could have been made and cured by the introduction of evidence.   But if this were not so, it would still remain that appellants have a lien by virtue of the trust deed made by the Colliery Company of February 21, 1893, which would be reached and satisfied out of the purchase money, unless appellants have in some way been lawfully deprived of it.

It may be conceded that courts of chancery have the power in a proper case to issue receiver's certificates which shall con-

stitute a paramount charge upon the franchises, earnings, and property of corporations under their control; but it is a power which should be exercised with the utmost caution, prudence, and reserve, and never without giving those whose interests are to be affected the opportunity to be heard in opposition to it. A proposition which seems to be so conformable to reason and justice scarcely needs the citation of authorities in its support. We will, however, refer to *Karn* v. *Rorer*, 85. Va. 754; *Wallace* v. *Loomis*, 97 U. S. 146; and Beach on Receivers, sec. 383, which uses the following language:

"It is fundamental that an order for the issue of the certificates can be lawfully made only after due notice to all the parties in interest, and after a full hearing, all parties being represented, as to the necessity or propriety of the expenditure proposed."

Thompson on Corporations, sec. 7182, quotes approvingly *Ex parte Mitchell*, 12 S. C. 83, where an order for the issue of certificates was made on the *ex parte* application of the receiver, and the Supreme Court, in reversing that order, said " that orders of that class can only be made upon motion after a proper investigation and hearing."

It is indeed elementary that no man can rightly be deprived of his property, or any security or lien which he may have acquired, except by his own consent, or his own negligence or default, or by proceedings had in accordance with the law of the land—that is to say, the opportunity to be heard in defence of his rights.

In the case before us the lien of appellants for supplies had been reported and confirmed without objection, and they had also their conceded lien by virtue of the deed of trust, and yet without notice to them, without representation, and without opportunity of being heard, their claim, the position of which had been thus ascertained and fixed, was subordinated to receiver's certificates issued under decrees which they had no opportunity to resist.

According to the decisions of the United States courts the trustee in a deed of trust is held to represent before the court the creditors secured, but such is not the case with us.

McDowell, the trustee in the deed of February 21, 1893, was in no sense the representative of Osborne & Co.

For these reasons we are of opinion that the Circuit Court erred in depriving appellants of the priority which they had acquired by virtue of their lien for supplies furnished, and under the deed to McDowell, trustee.

Witt & Watkins ask relief under Rule IX. of this court. They represent a debt contracted by Receiver Gray which amounted, at the date of the decree rendered on March 15, 1895, to less than $500, and it is contended their appeal should for that reason be dismissed. From that decree Witt & Watkins, it is true, might have appealed, but were not obliged so to do, and at the date of the last decree appealed from their claim, with interest added, amounted to more than $500. We think that they are properly before the court, and are entitled to relief under Rule IX., as construed in *Nicholson* v. *Gloucester Charity School*, 93 Va. 101, and a number of cases there cited. This debt to Witt & Watkins was created upon the faith of the decree of the court which appointed Gray receiver, and conferred upon him certain powers and duties. In discharge of those duties he contracted this debt, which was subsequently reported to the court, and, without objection, was allowed. Witt & Watkins thus acquired a vested right to the payment of this debt in a certain order, of which they have not been deprived by their own act or by due process of law.

For the reasons given in passing upon the appeal of Osborne & Co. the decree complained of is erroneous as to Witt & Watkins.

We are of opinion that the decrees of the Corporation Court of Bristol as to Osborne & Co. and Witt & Watkins should be reversed, and in all other respects affirmed.

*Reversed in part.*