Present: All the Justices

UNITED SAVINGS ASSOCIATION
OF TEXAS, F.S.B., ET AL.

                                  OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v.  Record No. 951470                    September 13, 1996

JIM CARPENTER COMPANY

            FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                 James W. Haley, Jr., Judge

TART LUMBER COMPANY, INC.

v.   Record No. 952238

DREWER DEVELOPMENT CORPORATION, ET AL.

            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                 Thomas D. Horne, Judge

ADDINGTON-BEAMAN LUMBER COMPANY, INC.

v.   Record No. 960615

ROBERSON BUILDERS, INC., ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
               Russell I. Townsend, Jr., Judge


     In these appeals we consider the applicability of mechanic's

liens to materials furnished for specific construction projects

under pre-existing, non-binding credit agreements between

contractors and materialmen.[1]  In each instance, the contractor

or its successor-in-interest asserts that the materials were

furnished under "open accounts,"[2] thus each delivery of materials

---

[1]In addition to the original contractors and materialmen,
each suit involved subsequent purchasers of the subject
properties and their lenders.  For the purposes of this opinion,
we will limit our discussion to the relevant transactions between
the original parties, since these transactions formed the basis
for the mechanic's liens at issue.

[2]Parties on both sides of these disputes use the term "open
account" to refer to the relationship between the materialmen and
the contractors, though apparently subscribing to different

constituted a separate contract. The materialmen assert that the materials and deliveries are identifiable to specific projects under "running accounts,"[3] thus constituting a single continuing contract for each parcel. For the reasons which follow, and under the specific facts of these cases, we agree with the materialmen.

## I.
## BACKGROUND

### A. United Savings Association of Texas v.
### Jim Carpenter Company

In 1983, Kenneth and Keith Ross (Ross Brothers), operating as joint proprietors, completed an application for credit with Jim Carpenter Company (Carpenter) in contemplation of purchasing building materials. In the application Carpenter agreed to extend credit, and Ross Brothers guaranteed payment on any credit extended. Ross Brothers subsequently incorporated, but otherwise continued to function as before.

---

interpretations of that relationship. The term "open account" can be applied generally to any unsecured line of credit. Black's Law Dictionary 1090 (6th ed. 1991). For the purposes of this opinion, we will use the term "open account" to refer to a revolving line of credit based upon a credit application, but for which there is no obligation on either party to buy or sell materials for specific projects.

[3]The term "running account," like "open account," has broad application to various forms of revolving credit. Black's Law Dictionary 1333 (6th ed. 1991). As used generally in our opinions, however, the term has a more limited meaning when applied to the relationship between materialmen and contractors where materials identifiable to specific projects are supplied under a continuing contract. See, e.g., Southern Materials Co. v. Marks, 196 Va. 295, 297, 83 S.E.2d 353, 355 (1954). Accordingly, we have selected this term to distinguish the materialmen's assertions concerning their relationships with the contractors from the "open account" relationship described by the contractors.

In 1989, Ross Brothers began construction of houses on two parcels in the Blake Farm subdivision of Stafford County. Ross Brothers ordered materials from Carpenter using separate purchase order job sheets for each parcel. Carpenter furnished the materials with invoices, assigning separate account numbers to each parcel, and submitted regular statements of the accounts to Ross Brothers. Deliveries were made to each parcel beginning on February 12, 1990 and ending on July 26, 1990. Ross Brothers paid for only one delivery. The two completed homes were sold in June and July of 1990.

On August 21, 1990, Carpenter filed memoranda of mechanic's liens on each parcel which it subsequently sought to enforce by amended chancery actions filed August 12, 1994. The two chancery suits were consolidated and referred to a commissioner in chancery, who concluded the mechanic's liens were proper. The defendants filed exceptions to the commissioner's report, including the contention that the liens, or portions thereof, would be barred by the 90 day limitation of Code § 43-4 if each delivery were viewed as a separate contract. The chancellor sustained the commissioner's findings and awarded judgment to Carpenter. We awarded an appeal to the defendants who are principally represented by United Savings Association of Texas, F.S.B., a mortgage lien holder on one of the properties.

## B. Tart Lumber Company, Inc. v. Drewer Development Corporation

Tart Lumber Company, Inc. (Tart) entered into a credit agreement with Drewer Development Corporation (Drewer) to furnish

Drewer with materials for building projects. Between August 8, 1990 and November 27, 1990, Tart provided Drewer with building materials for a number of residential construction projects in Loudoun and Fairfax Counties on land owned by Drewer.

For various aspects of each project, Drewer would submit a list of requirements or "takeoff." Generally, each takeoff would list all the materials for a house or townhouse. Tart would then furnish Drewer with a thirty-day firm offer on the materials it could supply. Tart did not supply complete house packages, and the record does not establish how Drewer obtained those materials which Tart could not furnish. When Drewer accepted Tart's offer, the materials were furnished along with an invoice referencing the specific project on which the materials were to be used. On occasion, Drewer would submit "fill-in" requests for additional materials which Tart would supply. Tart provided Drewer with regular statements combining charges under invoices for all materials furnished during a given time period.

Beginning in the summer 1990, Drewer experienced financial difficulties and ceased payment on its account with Tart. In response, on December 12, 1990, Tart filed memoranda of mechanic's liens on twelve properties, organizing in each memorandum all the invoices for a specific parcel.

On June 27, 1991, Tart filed a bill of complaint to enforce the liens. Although Drewer did not file an answer, the secured parties and trustees who financed the construction filed timely pleadings to contest the liens. The cases were consolidated and referred to a commissioner in chancery. The commissioner found

that each delivery of materials was a separate contract, and, thus, he concluded that materials delivered more than ninety days before the memoranda were filed were not subject to mechanic's liens. The chancellor upheld the commissioner's findings. We awarded Tart an appeal.

### C. Addington-Beaman Lumber Company, Inc. v. Roberson Builders, Inc.

On August 16, 1990, Roberson Builders, Inc. (Roberson) completed an application for credit with Addington-Beaman Lumber Company, Inc. (Addington-Beaman). Addington-Beaman furnished Roberson with building materials for the construction of houses on three parcels owned by Roberson in two subdivisions in the City of Chesapeake. Each invoice referenced the original customer number assigned to Roberson's credit application, but was segregated by parcel.

Although it does not appear from the record that Addington-Beaman sent Roberson periodic statements, invoices for each parcel were separately totaled by Addington-Beaman's accounting staff and the statements were bundled together by parcel with the adding machine tape showing the total amount due for that parcel. In one instance, an Addington-Beaman employee made a notation on one set of invoices that settlement of the contract for the sale of the home built on that parcel was expected shortly, at which time, presumptively, the invoices for the materials furnished for that project would be paid. Roberson did not pay for any of these materials before or after it conveyed the properties to home buyers.

For Lot 24, the deliveries were made from September 9, 1990 to October 25, 1990.  For Lot 122, they were made from September 6, 1990 to October 31, 1990.  For Lot 227, they were made from September 18, 1990 to November 13, 1990.  Addington-Beaman filed memoranda of mechanic's liens for Lot 24 and Lot 122 on January 29, 1991 and on Lot 227 on February 28, 1991.

After Addington-Beaman filed bills of complaint to enforce its mechanic's liens, all three matters were referred to a commissioner in chancery.  The commissioner found for Addington-Beaman.  The chancellor reversed the commissioner's findings, ruling that each delivery was a separate contract required to meet the time requirements of Code § 43-4, even if filed under a combined lien.  Thus, the chancellor ruled that only those deliveries which fell within the statutory time requirement were subject to the liens and judgment was awarded only for the amounts on those invoices which fell within that time period.  We awarded Addington-Beaman an appeal.

II.
OPERATION OF MECHANIC'S LIENS UNDER CONTINUING
CONTRACTS AND OPEN ACCOUNTS

The central issue of each of these appeals is whether the materials were furnished by materialmen under specific continuing contracts or merely by marketplace suppliers under general open accounts.  See Staples v. Adams, Payne & Gleaves, Inc., 215 F. 322, 327-28 (4th Cir. 1914).  We have previously stated the standard for operation of mechanic's liens under these differing forms of contract:

> "If the materials were furnished under a single contract, and were in fulfillment thereof, the items of

the account would be continuous, and the material man would have ninety days from the date of the last item within which to file his account and perfect his lien. . . . On the other hand, if the several items of the account, or a portion of them, are furnished under separate contracts, then the lien should have been filed ninety days from the date of the last item under each independent contract."

First National Bank of Richmond v. William R. Trigg Co., 106 Va. 327, 339-40, 56 S.E. 158, 161 (1907)(quoting Central Trust Company v. Chicago, K. & T Ry. Co., 54 F. 598, 599 (1893)).

However, it appears that the specific issue of distinguishing between deliveries of construction materials under running accounts amounting to a single continuing contract and deliveries under open accounts amounting to separate contracts is a matter of first impression in Virginia, although not uncommon to the law of mechanic's liens generally.[4] See, e.g., Annotation, When contract, transaction, or account deemed "continuing" one as regards time for filing mechanics' lien, 97

_____

[4]In Sergeant v. Derby, 87 Va. 206, 12 S.E. 402 (1890), we held that a single contract for a specific amount for construction materials for two separate houses provided a sufficient foundation for a mechanic's lien on both houses. There, we were not required to determine whether multiple deliveries of materials identified to a specific construction project constitute individual separate contracts. Also, in Addington-Beaman Lumber Co. v. Lincoln Savings and Loan Assoc. 241 Va. 436, 403 S.E.2d 688 (1991)(hereinafter referenced as Lincoln to avoid confusion with the present appeal involving Addington-Beaman), a case involving an open account for construction materials, we held that where there is a series of individual but related transactions identified to specific lots benefited by the materials, the materialman is required to apportion the costs of the materials in the memoranda of mechanic's liens to specific lots. Neither of these cases addresses the specific issue of the present appeals by distinguishing a running account amounting to a single continuing contract from a general open account amounting to multiple contracts.

A.L.R. 780 (1935). We begin our analysis by reviewing the settled law of mechanic's liens in Virginia.

Mechanic's liens are authorized by Code § 43-3(A), which provides:

> All persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold . . . shall have a lien, if perfected as hereinafter provided, upon such building or structure . . . .

Code § 43-4 establishes the criteria for the filing of a memorandum to perfect the mechanic's lien:

> A . . . lien claimant . . . in order to perfect the lien given by § 43-3 . . . shall file a memorandum of lien at any time after the work is commenced or material furnished, but not later than ninety days from the last day of the month in which he last performs labor or furnishes material, and in no event later than ninety days from the time such building, structure, or railroad is completed, or the work thereon otherwise terminated.

Mechanic's liens were created to provide the "security of a lien to those who, by their labor and materials, have enhanced the value of [a] 'building or structure' . . . ." Lincoln, 241 Va. at 439, 403 S.E.2d at 689. Although a mechanic's lien "must have its foundation in a contract," Rosser v. Cole, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989), the contract need not be in writing. Pario v. Bethell, 75 Va. 825, 829 (1881).

Nor is there any requirement that the contract at its inception state with specificity the nature of the work to be done and/or the materials to be furnished. Rather, where the work or materials are furnished as part of a continuing contract related to a single property, a single contract adequate to

underpin a mechanic's lien will be found to exist.  Thus, in Osborne v. Big Stone Gap Colliery Co., 96 Va. 58, 30 S.E. 446 (1898), we stated that "[i]t is true that a number of items were furnished more than ninety days before the account was filed . . . but it was a running account, and, where nothing to the contrary appears, is to be considered as falling due at the date of its last item."  Id. at 66, 30 S.E. at 449 (emphasis added).

Determining whether a particular claim is founded upon an account constituting a single continuing contract or upon separate and independent contracts is a question of fact, but one which turns upon a substantive, rather than technical, view of the situation.  See Chicago Lumber Company of Omaha v. Horner, 317 N.W.2d 87, 90 (Neb. 1982).  In making this determination, the trier of fact should consider the factors surrounding the dealings of the parties including their agreement and its purpose, the object of the work done or the materials furnished, the time when the work was done or materials were furnished, and other circumstances which suggest the nature of the parties' intentions.

Unlike the labor of a subcontractor, which can be readily identified with a specific project, the utilitarian nature of construction materials places upon the materialman a greater burden in establishing his right to a lien on a particular project.  Accordingly, applying the analysis used in Osborne and a non-technical view of the situation, where the course of dealing between the parties shows that each understood that the materials were being supplied for a particular project, rather

than merely for general use by the contractor, and nothing in the record suggests that a mere open account was intended, a continuing contract will be found.  With these principles in mind, we turn now to the specific cases in these appeals.

                              III.
              NATURE OF THE SPECIFIC ACCOUNTS

     In each of the present cases, the parties focus a great deal of attention on the initial applications for lines of credit. However, as is shown by each record, these documents are not, and do not purport to be, contracts.  The credit applications did not obligate either the contractor seeking credit or the materialman offering credit to purchase or furnish, respectively, any given materials at any given time.  In short, while these documents may be evidence of the intentions of the parties with respect to the subsequent contracts represented by the accounts in question, they do not represent the sole basis of the formation of those contracts.

              A. United Savings Association of Texas v.
                      Jim Carpenter Company

     In Carpenter, the contract is evidenced by the purchase orders, invoices, and account statements.  The materials furnished to each parcel were invoiced and billed under an account number unique for each parcel.  This method of record-keeping clearly reflects an implied, if not express, unitary agreement of the parties for furnishing materials for specific construction projects under a continuing contract.  Considering the substance of this course of dealing, we believe that the separate orders and deliveries were part of an ongoing, unitary

transaction.  Nothing in the record indicates that Ross Brothers sought competitive bids or otherwise sought the materials from other suppliers.  Accordingly, we hold that the chancellor correctly ruled that the materials were furnished under a single, unitary contract for each parcel.

### B. Tart Lumber Company, Inc. v. Drewer Development Corporation

In Tart, Drewer's takeoffs clearly constituted requests for bids, which, once accepted, created a contract for materials for that construction project covered by each takeoff.  Here, the materials furnished under each request were part of a single construction project, as is shown by the fact that each invoice referenced a specific parcel.  Moreover, Tart's salesman testified that in most cases the materials were delivered in bulk shipments to the individual parcels and that he regularly travelled to the job sites "because we were dealing in such large quantities, I wanted to make sure . . . the deliveries were dropped in the correct locations."

The salesman testified that materials were supplied under "fill-in" orders only where "either the takeoff was incorrect or some of the material [had been] broken."  Moreover, when a fill-in was requested, it does not appear that any competitive process was used.  Rather, Drewer simply contacted Tart and requested that the materials be supplied.  Tart then supplied the fill-in materials under an invoice referencing the specific parcel.[5]

---

[5]In certain instances, Tart supplied material to Drewer without referencing specific parcels, and these materials were billed as part of the combined statements sent to Drewer.  However, Tart excluded the charges for these materials when

Thus, once Drewer accepted Tart's bid on a takeoff, the deliveries under that account, including those materials supplied as fill-ins, became part of a single, continuous contract related to a specific construction project.

The fact that Tart combined invoices for multiple parcels in unitary billing statements does not preclude a finding that the materials were delivered to the individual parcels under separate continuing contracts. Nothing in the record suggests that the combined statements were used for any purpose other than the convenience of the parties. Moreover, when it filed its memoranda of mechanic's liens, Tart was able to segregate the charges for the materials furnished for each parcel, in a manner similar to a permissible apportioning of an account between related properties under a single contract. See Lincoln, 241 Va. at 439-40, 403 S.E.2d at 689-90. Accordingly, we hold that the chancellor erred in ruling that each delivery of materials constituted a separate contract.

## C. Addington-Beaman Lumber Company, Inc. v. Roberson Builders, Inc.

Finally, in Addington-Beaman, the record shows that each order and each delivery of materials was segregated by parcel. The record further shows that Addington-Beaman anticipated satisfaction of the invoices for a given parcel in conjunction with the settlement on the sale of the home constructed on that parcel. As with the other two cases, the substance of the relationship between the parties establishes that the materials

filing its liens.

were furnished under separate, but continuing contracts for each parcel.  We find nothing in the record to support the contrary conclusion that the parties viewed the relationship as a mere open account.  Accordingly, we hold that the chancellor erred in treating the individual deliveries of materials as separate contracts.

IV.

CONCLUSION

In <u>United Savings Association of Texas v. Jim Carpenter Co.</u>, the chancellor correctly found that the mechanic's liens were filed within ninety days from the last delivery of materials under continuing contracts for each parcel.  Accordingly, we will affirm that judgment.

In both <u>Tart Lumber Co. v. Drewer Development Corp.</u> and <u>Addington-Beaman Lumber Co. v. Roberson Builders, Inc.</u>, the trial courts erroneously found that the accounts did not constitute running accounts amounting to continuing contracts, and hence incorrectly ruled on the time limitation for the filing of liens.  Accordingly, we will reverse the judgment of the trial courts in those two cases, and remand the cases for a determination of the amount of the liens as filed under continuing contracts for each parcel.

Record No. 951470 --<u>Affirmed</u>.<br>Record No. 952238 --<u>Reversed and remanded</u>.<br>Record No. 960615 --<u>Reversed and remanded</u>.

JUSTICE COMPTON concurs in result.