87   323
s 190s  311

## Annie E. Hotchkiss v. Frank E. Makeel, Receiver, etc.

1.   LIENS—*Priorities—Receiver's Charges and Prior Mortgage Liens.* —The Circuit Court of Cook County sitting in chancery has no power to adjudge that the charges of a receiver are paramount to the lien of a prior mortgage.

2.   SAME—*Priorities—Railroads Charged with a Duty to the Public—*

*Exception to the Doctrine.*—Railroads and other business properties charged with a duty to the public superior to private obligations, of which the mortgagee at the time of his investment is charged with knowledge that his security is liable to be displaced in favor of the superior obligation, are exceptions to the rule.

3. Estoppel—*Does Not Apply to a Mortgagee Standing By, etc.*—A mortgagee of private property who stands by and sees the owner or a receiver appointed in a suit to which he is not a party, care for and improve the mortgaged property, can not be said to do so at the peril of having his lien displaced in favor of the cost of such care and improvement.

Appeal from the Circuit Court of Cook County; the Hon. John Gibbons, Judge, presiding. Heard in the Branch Appellate Court at the March term, ·1899. Reversed and remanded with directions. Opinion filed February 27, 1900.

Frederick Arnd, attorney for appellant.

Thomas E. D. Bradley and Robert J. Frank, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the court.

The property known as the Alabama Hotel, in Chicago, was in 1895, and for some years prior thereto, subject to a mortgage made by former owners thereof to Edward Hotchkiss, to secure $16,000. By *mesne* conveyances the title to said property, subject to such mortgage, became vested in one Charles H. Briggs, who traded the property to one Michael J. Dunne. Claiming that he had been defrauded in the trade, Dunne filed his bill in equity in the Circuit Court of Cook County, against Briggs, to obtain a setting aside of the trade and a restoration of the rights of each in the respective exchanged properties. Dunne prevailed in the suit, in both the Circuit and Supreme Courts (see Briggs v. Dunne, 168 Ill. 226), and the hotel property came back to Briggs.

The decree of the Circuit Court ordering a setting aside of the trade and a reconveyance of the properties, was entered July 23, 1896, and on that day the appellee, Makeel, was, by consent of the parties to the suit, appointed receiver of the hotel property, and shortly afterward, he, as such

receiver, entered into possession thereof; and he remained continuously in possession of the same, either as receiver, or as lessee, until October 25, 1898.

Makeel made his first report as receiver February 5, 1897, and it appearing therefrom that the operating of the hotel was being carried on at a loss under the receivership, and for various other reasons set forth, the court entered an order on March 8, 1897, reciting, among other things, that it was necessary for the conserving of the property that the same should be kept open and running as a hotel, and that the best interests of all parties would be subserved by the execution of a lease of the premises to said Makeel, individually, and it was ordered that such a lease be entered into.

Thereupon, such lease was entered into between Makeel, individually, and Briggs and Dunne, for a specified term, beginning March 8, 1897, and ending May 1, 1898.

Makeel, as receiver, subsequently filed other reports, the first one of which was on February 15, 1898, in which he stated that since March 8, 1897, he had continued to care for the property and conduct the hotel business under a special arrangement, in the nature of a lease, running from March 8, 1897, to May 1, 1898. Other reports followed until September 21, 1898, on which date Makeel, as receiver, petitioned the Circuit Court, setting forth, among other things, the final determination of the Dunne suit; that Briggs, to whom the property had gone back as a result of that suit, had been cut off by a foreclosure of the mortgage to Edward Hotchkiss, and that the purchaser under the foreclosure sale would be entitled to a master's deed of the property about October 1st next ensuing; that there was a balance due him, as receiver; that there were no funds in the hands of the receiver out of which the amounts found due and allowed to him by previous orders might be paid, and that Briggs was insolvent, and asking for a decree declaring such sums to be a valid and paramount lien on the premises, and that unless the same should be paid, etc., the property be sold to satisfy the same.

Following that petition, and on October 1, 1898, the court upon the application of the receiver granted an injunction restraining the appellant and her solicitors and agents from taking possession of the property, or in any way disturbing or molesting the possession of the receiver, Makeel, until the further order of the court.

And on January 28, 1899, the decree appealed from and now under review, was entered by the Circuit Court, making findings at great length and allowing to the appellee a balance of $1,917.42, and declaring said amount to be a paramount charge and lien upon the property, and ordering a sale if it be not paid, etc.

While the recited proceedings were being had in the Dunne suit, in the Circuit Court, and on January 19, 1897, Edward Hotchkiss filed his bill in the Superior Court of Cook County, to foreclose the $16,000 mortgage held by him, and that cause went to a decree of foreclosure and sale, and, on June 29, 1897, the property was sold thereunder, by a master in chancery, to Edward Hotchkiss.

He died subsequently, and the master's certificate of sale was assigned by the administrator of his estate, to the appellant, and afterward, on September 30, 1898, a master's deed was issued to appellant.

It was by virtue of such foreclosure decree and master's deed that appellant became interested in the property.

She had never, up to that time, been a party to the Dunne suit, nor had Edward Hotchkiss been a party thereto, except that at one time he intervened therein for a limited special purpose connected with the furniture of the hotel, and such matter becoming adjusted, he was dismissed out of the case within a comparatively few days after he first intervened. The receiver was not made a party to the foreclosure bill, but after the lease had been made to Makeel as an individual, the bill was amended and he made a party defendant, and, on May 17, 1897, he filed his answer in that suit. His answer being important in connection with the estoppel claimed against him, the whole of it, as shown by the abstract, is as follows:

Hotchkiss v. Makeel.

" Answer of Frank E. Makeel to the bill of complaint of Edward Hotchkiss, in the Superior Court of Cook County, Gen. No. 180,124. Defendant says that he is now in possession of the premises described in said bill of complaint, under a lease from Charles H. Briggs and Michael J. Dunne, two of the defendants to said bill, to this defendant, approved by said complainant, Edward Hotchkiss, and by Maurice A. Mead, one of the defendants to said bill, which said lease is, however, subject to trust deed being foreclosed herein, as well as subject to the trust deed to Rufus C. Frost, described in said bill of complaint, and is subject to other clauses of defeasance described in said lease and in said consents attached to said lease, and the possession of this defendant and the rights of this defendant are entirely subject to said two trust deeds, and to the orders and decrees of this court in the above entitled proceeding. This defendant, further answering, neither admits nor denies the remaining allegations, statements or charges contained in said bill of complaint, nor any part thereof, and prays to be hence dismissed with his reasonable costs and charges in this behalf most wrongfully sustained."

Adverting again to the Dunne suit, the appellant, having received the master's deed on September 30, 1898, and having been enjoined by the order of October 1, 1898, from disturbing Makeel's possession of the property, entered her limited appearance in said suit for the sole purpose of answering and contesting the petition of the receiver filed September 21, 1898, and on October 8, 1898, she filed her special answer to such petition. This was the first time appellant had ever been a party to the suit for any purpose whatever.

It was upon a hearing of such petition by the receiver and her said answer, with additional evidence, that the decree appealed from was entered.

It should, probably, be added, that Edward Hotchkiss, though not a party to the Dunne suit, by an agreement between himself and Makeel attached to the lease from Dunne and Briggs to Makeel, consented to that lease being made. As we read that agreement it amounts, as against Hotchkiss, to no more than a waiving by Hotchkiss of his rights to have a receiver appointed under his bill to fore-

close, and a consent by him to the lease, in consideration that Makeel should pay $600 for taxes and insurance premiums, on the hotel; and, as against Makeel, that he would pay said sum for taxes and insurance, and would surrender possession of the property to whoever should be entitled to a master's deed thereof under a sale to be had in said foreclosure suit, "immediately upon such person becoming entitled to such master's deed; it being understood that said Makeel's possession is entirely subject to the rights of the purchaser" at said master's sale. (Quotation from the agreement.)

Such agreement was entered into, seemingly, to insure a certain and continuous operation of the hotel for the term of the lease, and enable the accommodation of boarders to be relatively permanent, it being a boarding rather than a transient hostelry.

The first and most important question arising upon the record, is as to the power of the Circuit Court, sitting in chancery, to adjudge the charges of the receiver to constitute a paramount lien over the lien or title of the prior mortgagee.

The power to subordinate the lien of a mortgage to the charges of a receiver, has been frequently exercised by equity courts in recent years, in the cases of mortgages of railroads, and other properties impressed with a public duty, and in one case (Beckwith v. Carroll, 56 Ala. 12, and probably in other analogous cases), where growing crops were involved, the receiver was considered to have created the very property over which the receivership extended.

But, wherever exercised, it has been because of the peculiar character of the property. A mortgage is a contract obligation, and is as sacred as any other contract; and anything that destroys or impairs its lien destroys or impairs a contract.

The reason that supports the excepted cases of railroads and some other business properties is, that they being charged with a duty to the public that is superior to any private obligation, the mortgage owner has knowledge

when he invests that his security is liable to be displaced in favor of that first obligation. In no well-considered case that we know of has the power been exercised to the subversion of the rights of a prior mortgagee of purely private property, unless for very peculiar reasons.

But it is contended in this case, that the mortgagee stood by, encouraged, and saw his security protected and perhaps enhanced by the receiver. There is no evidence that the mortgagee did anything except of a permissive character, and it would be a hazardous equitable doctrine to hold that a mortgagee of private property who stands by and sees the owners thereof or a receiver appointed in a suit to which he is not a party, between contending and rival owners, subject to his mortgage, care for and improve the security, does so at the peril of having his lien displaced in favor of the cost of such care and improvement. We can not assent to such a doctrine.

It was, in our opinion under the facts in this record, an unwarranted exercise of the equity powers of the Circuit Court to give to the receiver priority of lien for his charges over the mortgage of appellant. The fundamental principles of equity jurisprudence forbid it.

There are other questions presented by the record and especially that of estoppel, which, under the facts before us, would have to be decided adversely to the appellee, but we will not take time to treat of them.

The title to the property having passed to appellant, and there being no *corpus* left for the receiver's charges to attach to, and Briggs being concededly insolvent, the decree will be reversed and the cause remanded, with directions to the Circuit Court to dismiss the petition of the receiver, filed September 21, 1898, for want of equity. Reversed and remanded with directions.