## Wytheville.

STATE BANK OF VIRGINIA v. DOMESTIC SEWING MACHINE CO.

JUNE 20, 1901.

Absent, Cardwell, J.

1. RECEIVER'S CONTRACTS—*Alteration by Court.*—The contracts of a receiver, made with express or implied authority, cannot be annulled at the pleasure of the court.
2. RECEIVERS—*Active and Passive—Powers.*—The powers of active receivers of going concerns are very much broader than those of passive receivers who are charged with the mere preservation of property.
3. CONTRACTS—*Novation—Intention.*—Whether a new security shall be taken to be a novation, or substitution for, and an extinguishment of, a prior indebtedness, is a matter of intention; and the burden rests upon him who asserts that there has been such novation to establish it.
4. RECEIVERS — *Powers—Discounts—Collaterals—Change of Evidence of Debt—Case in Judgement.*—Under the evidence in this cause, the receiver had authority to discount notes which came into his hands in the course of business, and to protect them by the hypothecation of other notes and securities as collateral; and, when he did so, such collaterals, to the extent necessary to protect the discounts, ceased to be assets of the receivership, and became the absolute property of the party discounting. The subsequent surrender of the collaterals to the receiver was for collection only, and as agent for the true owner, and, having applied such collections to expenses of the receivership, the same should be restored out of the other funds in the hands of the receiver.
5. TRUSTS AND TRUSTEES— *Diversion of Fund.*—A court of equity will follow a fund diverted from the owner, or charged with a lien, as far as it can be traced, and will enforce the true owner's rights against any property in which it may have been invested.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced June 15, 1900, in the chancery suit of *Jones, Trustee,* v. *Domestic Sewing Machine Company and Others*, in which the appellant proved its debt.

*Reversed.*

The opinion states the case.

*Coke & Pickrell*, for the appellant.

*B. T. Crump*, for the appellees.

WHITTLE, J., delivered the opinion of the court.

This is an appeal from a decree of the Chancery Court of the city of Richmond. The controversy is one for priority of claim between the State Bank of Virginia and the receiver of the Domestic Manufacturing Company, creditors of the Domestic Sewing Machine Company.

In 1893 the Domestic Sewing Machine Company became insolvent, and executed a deed of trust, or assignment, conveying all its property in its agency and place of business in the city of Richmond to Henry C. Jones, trustee, for the benefit of its creditors.

Thereupon, the trustee filed a bill in the Chancery Court to administer the trust, and in that cause a receiver was appointed and authorized to continue the business, so far as, in his judgment, it might be necessary to speedily dispose of the assets and wind up the trust.

Subsequently he submitted an exhaustive report of his transactions to the court, from which it appeared that it was the opinion of the creditors that great loss and damage would result if the affairs of the company were closed at once, and recommending that the business be temporarily conducted by the receiver until a permanent organization or other final settlement could be effected.

The receiver, conforming to this policy, and with the consent of the creditors, adopted the necessary measures to continue the business. He suggested, among other things, that authority be conferred upon him to have discounted from time to time, as the necessities of the receivership required, such negotiable paper then in his hands, or which might come into his hands, as he should consider it expedient to discount, and to arrange for its proper protection. The report and all acts of the receiver were approved and confirmed by the court, especially his action in changing the management from *a passive* to *an active receivership*, and looking to a temporary continuation of the business. To effectuate the new policy, the receiver was empowered to discount and protect such commercial paper as might come into his hands, and also to issue receiver's certificates, not to exceed $40,000, payable at the State Bank of Virginia. These certificates were declared to be the first lien upon all the sewing machines * * * * and upon all other property in the store or warehouse of the company, or which the receiver might have in the conduct of his office, wheresoever the same might be, together with all notes, leases, open accounts and other bills receivable, * * * for or on account of sewing machines theretofore sold by him, or which he might thereafter sell. The lien, however, was to be subject and subordinate to the payment of rent, taxes, and the expenses of conducting the business, including salaries, wages, costs, fees, and charges, together with the cost price of any machines or other goods or merchandise which the receiver might purchase.

By a subsequent decree, Henry C. Jones was discharged from the receivership, and J. H. Derbyshire was appointed receiver in his place and stead, and was clothed with all the rights and privileges, and subjected to all the liabilities and duties conferred or imposed upon the former by previous decrees in the cause.

Afterwards, the business having been attended with considerable loss, the cause was referred to a commissioner in chancery,

to take certain accounts, looking to a final settlement of the affairs of the company. The commissioner reported a large claim in favor of the receiver of the Domestic Manufacturing Company, composed of open accounts and receiver's certificates. He also reported the demand of the State Bank of Virginia, represented by notes discounted by it for Receiver Derbyshire, and receiver's certificates. The commissioner says of this latter claim: "The business was continued by Receiver Derbyshire under these decrees, and on the 16th of December, 1896, the State Bank of Virginia held certain notes which had been discounted for Receiver Derbyshire of the face value of $6,614.34.   *   * The receiver believed that he could collect these notes to better advantage than the bank, and wished to get possession of them for that purpose. With this object in view, the evidence shows that he made the following agreement with the bank. 'On December 16, 1896, said bank discounted seventeen receiver's certificates, to-wit: Nos. 1 to 16, inclusive, and No. 41, dated December 15, 1896, of the face value of $8,500, and payable to the State Bank of Virginia, on April 26, 1897, with interest from date. Said bank thereupon credited the account of said receiver by $8,500, whereupon the receiver on the same day checked on said account for the sum of $6,615.34, and received the discounted notes mentioned above, amounting to that sum, upon the understanding and parol agreement that he was to hold said notes as a special trust fund, and deposit all collections made on account thereof to the credit of J. H Derbyshire, trustee, in said bank, to be applied to the payment of said receiver's certificates. Thereupon the notes were marked paid in the home discount book and discount ledger of said bank.' "

It appears that the account of J. H. Derbyshire, trustee, was opened with the bank December 19, 1896, and continued throughout his receivership. From the trustee's account, the receiver's certificates held by the bank were reduced from $8,500 to $6,000, and on July 23, 1897, there was a balance to the

trustee's account of $1,217.41.    It further appears that while
Derbyshire was holding withdrawn notes amounting to $6,-
615.34, and making deposits in the bank to the trustee's account,
he collected five notes made by A. Kent, belonging to the trust
fund, amounting in the aggregate to $2,531.64; that he did not
deposit these collections to the credit of the trustee's account,
but applied them to current expenses of the receivership.  He,
however, substituted $4,396.28 of other notes and accounts held
by him as receiver, in the place of the Kent notes, as collateral
security for discounts of negotiable notes and receiver's certifi-
cates discounted at the bank.

It must be observed that to the extent of $6,615.34, the
$8,500 of receiver's certificates held by the bank were com-
posed of *notes previously discounted by the bank for the receiver.*

In reporting demands against the assets of the company, the
commissioner allowed precedence to the amount due the bank
from the receivership for *discounts of notes,* over the open ac-
counts due the receiver of the Domestic Manufacturing Com-
pany for the purchase price of sewing machines; but gave pref-
erence to the latter over the residue of receiver's certificates held
by the former.    To this finding of the commissioner the receiver
of the Domestic Manufacturing Company excepted, and insisted:

1st.  That the commissioner should have found and reported
that Receiver Derbyshire had no authority to enter into the
agreement of December 16, 1897, with the bank.

2nd.  That the receiver had no authority to withdraw any
funds in his possession, as receiver, from the disposition directed
to be made by the court, and to deposit them to his credit as
trustee in the bank.

3rd.  That the sum of $1,217.41, so deposited, belonged to the
general funds of the receivership, and should not have been ap-
plied to the payment of receiver's certificates owned by the bank.

4th.  That the commissioner ought not to have reported that
the bank was entitled to have the proceeds of the notes and ac-

counts pledged by the receiver, applied to receiver's certificates held by it.

5th. That all receiver's certificates stood upon an equal footing, and the bank having held originally $8,500 of these certificates, and having received $2,500 out of the funds of the receivership, should refund and pay back to the receivership that amount, and make claim for its $8,500 of receiver's certificates, subject to all prior claims.

6th. That the commissioner ought not to have reported that the bank was entitled to be paid $2,797.82 for notes discounted by it, before anything should be paid exceptant on his open account, but should have given preference to the entire open account of exceptant, or, at most, have placed their demands on the same footing.

The bank excepted, because the commissioner reported the balance due it on receiver's certificates, not based on discounted notes, as a debt of the fourth class, thereby postponing it to the open accounts of the receiver of the Domestic Manufacturing Company, its contention being that, as to said balance, the bank was entitled to priority over the other debts of the fourth class, and of said open accounts.

The decree appealed from sustained exceptions one to five, inclusive, and overruled exception sixth, and also the exception of the bank; and this ruling gives rise to the case presented on appeal.

In his memorandum for decree, the chancellor concedes Receiver Derbyshire's authority to discount notes which came into his hands in the course of business, and to protect them at maturity, either by payment with money or other notes, upon default of the makers; and also his authority to pledge other notes as collateral security for such discounted notes. He declares that "all such discounted notes constitute a claim of the first dignity against the assets of the receivership." But that "the receiver had no authority to pledge the notes, nor any other part of the

assets of the receivership in his hands, as collateral security for the payment of receiver's certificates; nor had he authority to pay off any of these certificates with the proceeds of notes which he had undertaken to pledge as security therefor, nor in any other manner. So far as the bank's claim is based on notes discounted for the receiver, it has precedence over the open accounts of the receiver of the Domestic Manufacturing Company, of course, over all the receiver's certificates, and the bank has the right to hold the collaterals as security for the payment of its claim.

"In settling the account between the bank and the receiver, credit the bank by all the sums advanced to the receiver in the way of discounts, and with interest thereon, and charge it with all the money it has received from the receiver, or from the collaterals in payment of such advances. All the receiver's certificates must stand on the same footing. All persons dealing with the receiver must be charged with full knowledge of the proceedings and the decrees in this cause, so far as they confer and limit his authority and powers.

"Sustain the first five exceptions to the commissioner's report, and overrule the sixth, and overrule the exception of the bank."

This ruling is, in effect, a recognition of the authority of Receiver Derbyshire to enter into the arrangement made between him and the bank in relation to *discounting notes*, "and his right to pledge other notes as collateral security for such discounted notes," *which is precisely the view taken of the transaction by the commissioner*, nevertheless, the practical result from the conclusion reached, and the decree sustaining the five exceptions of the receiver of the Domestic Manufacturing Company to the report, was to deprive the bank of *the very preference* to which it had been declared entitled.

"The contracts of a receiver made with express or implied authority cannot be annulled at the pleasure of the court." Beach

on Receivers, sec. 329; *Vanderbilt* v. *Central R. Co.*, 43 N. J. Eq. 669.

There is a well recognized distinction, by the authorities, between *passive receivers*, who merely preserve the property, collect the assets, and report the fund to the court for distribution, and *active receivers*, to whom are confided the management of going concerns. The powers of the latter are necessarily very much broader than those of the former.

It is contended for the appellee that the acceptance by the bank of receiver's certificates for the amount of its demand for discounts was a *novation* of its original claim, and an extinguishment of any priority that may have attached to it. Whether a new security shall be taken to be a novation, or substitution for, and an extinguishment of, a prior indebtedness, is a matter of intention; and the burden rests upon him who asserts that there has been such novation to establish it. The rule is stated thus by this court, in a recent case of the *Fidelity Loan and Trust Co.* v. *Engleby, ante,* p. 168. "Whether or not a debt has been novated is a question of fact, and depends entirely upon the intention of the parties to the particular transaction claimed to be a novation. In the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness. The fact that the word 'paid' was stamped on evidences of debt surrendered to the debtor is not, standing alone, a controlling circumstance to show satisfaction." It is apparent that neither the receiver nor the bank, in this instance, intended a novation, for, after delivery of the receiver's certificates, the parties continued to act on the basis of the original agreement, using the receiver's certificates merely for the purpose of evidencing the true amount due from the receiver to the bank.

Under the decrees of the court, the receiver plainly had authority to discount notes, which came into his hands in the course of business with the bank, and to protect them by the hypotheca-

tion of other notes and securities as collateral; and when he did so, such collaterals, to the extent to which it became necessary to apply them to the protection of discounts, ceased to be assets of the receivership, and became the absolute property of the bank. Nor was their true status altered or affected by the circumstance that an agreement was made which, for convenience, the collaterals were delivered to Derbyshire to be collected by him and the avails deposited in the bank to his credit *as trustee.* In that respect he was not acting in the capacity of receiver, but the effect of the arrangement was to constitute him *trustee* or *agent* for the real owner of the collaterals, the bank. And if, as in the case of the Kent notes, he applied his collections to current expenses of the receivership, good faith required that he should make restitution to the bank, to that extent, out of other funds; and the assets of the receivership could in no wise be diminished or affected by the transaction.

The collaterals belonged to the bank, not to the receivership, and were delivered to Derbyshire as the agent of the bank, merely to facilitate their collection, *stamped* and *impressed* with a *conceded trust.*

The bank never parted with its equitable ownership or possession of the notes or their proceeds. The possession of Derbyshire, in legal contemplation, was *its possession;* and the receiver having, by misappropriation of the proceeds, gotten the benefit of money that belonged to the bank, should in equity and good conscience be required to reinstate the trust fund owned by the bank, and this may be done without the slightest prejudice to any other interest.

"A court of equity will follow a fund diverted from the owner or charged with a lien as far as it can be traced, and will enforce the true owner's rights against any property in which it may have been invested." *Fitzgerald's Ex'trx* v. *Irby, ante,* p. 81.

It is not perceived that the bank's demand, in excess of discounted notes protected by collaterals, evidenced by receiver's

certificates, stands on a different footing from, or is entitled to precedence over, claims of other creditors of the same class. The exception of the bank to the commissioner's report, denying such preference, was therefore properly overruled.

The findings of the commissioner upon the questions involved in this appeal were, in all respects, correct, and his report ought to have been confirmed.

The Chancery Court erred in sustaining the exceptions of the receiver of the Domestic Manufacturing Company to the report, and for that error, the decree complained of must be reversed, and the cause remanded for further proceedings to be had therein in conformity with this opinion.

*Reversed.*