Statement.

## Wytheville.

### Peoples National Bank v. Virginia Textile Co. and Others.

June 15, 1905.

Absent, Cardwell, J.

1. Receivers—*Debts Created by—Liability of the Fund.*—Generally the appointment of a receiver does not affect vested rights or interests of third persons in property which is the subject of the receivership, or disarrange the order of priority of existing liens, but where the receiver is appointed at the instance and for the benefit of lien creditors, and is charged with the duty of operating the property for their advantage, all proper charges, expenses, and liabilities incurred incident to the receivership are held to be a first charge not only upon the current earnings, but also on the *corpus* of the estate.

2. Receiver's Liabilities—*Ascertainment—Order of Reference.*—In the absence of other proper evidence of the liabilities of the receiver chargeable on a fund under the control of the court, the cause should be referred to a commissioner to enquire into and take evidence touching the same; and, when allowed, the decree for their payment should specify the amount of each claim, and fix the date from which interest is to be computed.

Appeal from a decree of the Corporation Court of the city of Lynchburg. Decree in favor of defendants. Complainant appeals.

*Affirmed in part.*

The opinion states the case.

*Caskie & Coleman,* for the appellant.

*Jno. H. Lewis, L. D. Lewis, James E. Edmunds, Wilson & Manson, Jno. W. Harvey* and *Harrison & Long,* for the appellees.

Whittle, J., delivered the opinion of the court.

This case is within narrow limits and practically presents a single question for decision.

It was a suit in equity, instituted by the appellant for the ultimate purpose of enforcing the lien of a deed of trust upon the plant of the appellee, the Virginia Textile Company, to secure coupon bonds to the amount of $25,000, all of which were held by the plaintiff. The bill was filed in open court, and the defendants were the Textile Company and the trustees in the deed of trust, who were also attorneys for the plaintiff, and one of whom was president of the bank.

The bill alleged the indebtedness of the Textile Company to the plaintiff, and their default in payment of certain notes and instalments of interest on the coupon bonds; that plaintiff was informed that some of the defendant's goods which had been shipped to the city of New York for sale had been attached by a creditor; and that other creditors were threatening to levy attachments upon its property; that the company had at great expense established valuable business connections, and organized and educated a force of skilled laborers, which, if disbanded, could not be replaced; that the retention of both the customers and employees was essential to maintain the value of the plant and other assets; and that the business was being conducted at heavy cost and daily loss. In order, therefore, to prevent the loss and damage which would result from a scramble among creditors for priority, and a wasting of the assets by a multiplicity of suits, the bill prayed for the appointment of a re-

ceiver to continue the business of the company under the direction of the court, and with such powers and authority as it might be deemed wise to bestow upon him; and for the usual relief afforded in such proceedings.

The defendants answered the bill, admitting the truth of its allegations and uniting in its prayer. Thereupon a decree was passed by the court, appointing the president of the bank receiver, with direction to take possession of all the company's property, which included not only the plant on which the plaintiff had the first lien, but other property, some of which was primarily liable for supply claims. The decree also invested the receiver with large powers, authorizing him to carry on the business and operate the property as a textile mill, "at the cost and risk of the fund," using the assets as a basis of credit; and, in order that he might be free-handed in the discharge of his duties, he was protected by injunction from interference either by the company, its agents and officers, or by creditors; the latter being required to litigate their demands in that suit.

When the receiver took charge of the business, the estimated value of the assets was $68,027.51, consisting of—

| | | |
|---|---:|---:|
| Machinery and equipment | $53,773 | 88 |
| Office furniture | 260 | 65 |
| Supplies on hand | 10,801 | 43 |
| Due from sales agent | 3,191 | 55 |

The receiver died about one year after his appointment, and his management was attended with serious loss. With the exception of the original plant and $2,102.19 paid to supply claim creditors, the assets of the company were consumed or lost, leaving a balance of $3,013 still due on supply claims, and additional liabilities created by the receiver amounting to several thousand dollars.

Subsequently, the plant was sold by decree of the court, the bank becoming the purchaser at the price of $15,975. It paid the costs and expenses of sale, but claimed the right to apply the residue of the purchase money to the coupon bonds secured by the deed of trust as the first lien on the property.

The legality of that contention, the result of which, if sustained, would be to exonerate the property sold from responsibility for both the amount of assets diverted from the payment of supply claims, and also for liabilities incurred by the receiver, presents the main question in controversy.

The decision of the lower court was adverse to the pretension of the bank, and it was decreed to pay a sufficient amount of the purchase money to discharge all the other indebtedness and the costs of the suit.

The general rule is conceded, that the appointment of a receiver does not affect vested rights or interests of third persons in property which is the subject of the receivership, or disarrange the order of priority of existing liens. But this principle is subject to an exception as firmly established as the rule itself, namely, that where the receiver is appointed at the instance and for the benefit of lien creditors, and charged with the duty of operating the property for their advantage, all proper charges, expenses and liabilities incurred incident to the receivership are held to be a first charge upon not only the current earnings but also the *corpus* of the estate.

The case in judgment comes fully within the influence of the foregoing exception, and the trial court correctly so held. *Miltenberger* v. *Logansport,* 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; *Kneeland* v. *American L. & T. Co.,* 136 U. S. 89, 10 Sup. Ct. 426, 34 L. Ed. 1052; *Kneeland* v. *Luce,* 141 U. S. 491, 12 Sup. Ct. 32, 35 L. Ed. 830; *Chicago, &c.* v. *McNulta,* 153 U. S. 553, 561, 14 Sup. Ct. 915, 38 L. Ed. 819; *Cake* v.

*Kohun,* 164 U. S. 311, 17 Sup. Ct. 100, 41 L. Ed. 447; *Metropolitan, &c.* v. *Tonawanda, &c.,* 103 N. Y. 245, 8 N. E. 488. See also *Karn & Hickson* v. *Rorer Iron Co.,* 86 Va. 754, 11 S. E. 431; *Osborn* v. *Big Stone Gap, &c. Co.,* 96 Va. 58, 30 S. E. 446; *State Bank* v. *Domestic, &c. Co.,* 99 Va. 411, 39 S. E. 141, 86 Am. St. 891.

It appears, however, that the only evidence of the amount and correctness of the debts alleged to have been incurred by the receiver is furnished by a list appended to the report of the administrator of the receiver.   The accounts there listed aggregate $2,721.83, and there was a general provision in the decree for their payment.

There ought to have been a reference to a commissioner to inquire into and take evidence touching these debts; and, if allowed, the decree for their payment should set forth specifically the amount of each claim and the date from which interest is to be computed.   *Spoor* v. *Tilson,* 97 Va. 279, 33 S. E. 609.

Under Rule IX, the Lynchburg Building Company assigns as error the failure of the court to make provision for the payment of the rent of its building occupied by the receiver.

It appears that the amount of that claim is in dispute, and it also should be made the subject of a reference to a commissioner.

The decree appealed from must, therefore, be affirmed on the main question involved, but reversed in the particulars indicated, and remanded for further proceedings to be hand in conformity with the views expressed in this opinion.

*Affirmed in part.*