## Staunton

## JACKSON COAL AND COKE CO. & OTHERS V. PHILLIPS LINE & OTHERS,

### and

## SEWARD & ROPER V. PHILLIPS LINE & OTHERS.

#### June 13, 1912.

#### Reheard September 12, 1912.

1. RECEIVERS—*Compensation—Operating Expenses.*—The lien on a vessel for materials or supplies furnished the owner or master, given by section 2963 of the Code, is ordinarily a right of property in the vessel, existing independently of possession, and arises as soon as the contract for the supplies or materials is made, but under the facts and circumstances of the case in judgment, court receivers who, in good faith, incur expenses in operating the affairs of an insolvent corporation are entitled to have allowed them, as part of the court costs incurred in marshalling and disposing of the property of the company, a reasonable compensation for their services and the expenses of operation incurred by them, including counsel fees, in preference to the lien given by section 2963 of the Code for materials and supplies furnished them.

2. TAXES—*Personalty—Lien—Failure to Levy—General Creditors.*— The State of Virginia has no right to levy on personal property for the tax assessed thereon, after the lapse of one year from the date on which such taxes were assessed, and the city of Petersburg has no right to distrain on personal property assessed with taxes in its favor after such taxes have been returned delinquent. After those dates, without levy or distress, the lien on the property is lost, and the position of the State and city, respectively, is that of general creditors of the owner of the property assessed with the taxes.

3. EQUITY—*Surcharging Accounts—Data—Receivers.*—A motion to surcharge the accounts of a court receiver, which is not accompanied with sufficient data to enable the court to ascertain, with any degree of certainty, what items or matters in the

accounts, which have been audited and approved by the court, were complained of will be overruled, especially when the motion is accompanied with a disclaimer of any intention to impute bad faith to the receiver.

4. RECEIVERS—*Operating Expenses—Court Charges—Liens*—As a general rule, the appointment of a receiver does not affect vested rights or interests of third persons in property which is the subject of the receivership, or disarrange the order of priority of liens. But where the receiver is appointed at the instance and for the benefit of lien creditors, and charged with the duty of operating the property for their advantage, all proper charges, expenses and liabilities incurred by the receiver incident to the receivership constitute a first charge, not only upon the current earnings, but also upon the *corpus* of the estate. The expenses which a court authorizes a receiver to create in the operation of property under its control are necessarily burdens upon the property taken possession of, irrespective of who may be the ultimate owner of the property, or who may have the preferred lien, or who may invoke the receivership.

5. RECEIVERS—*Operating Expenses—Taxes—Liens—General Expenses.* Where the stockholders of an insolvent corporation, for whose benefit chiefly a receiver of the assets of the corporation is appointed, acquire the first lien on a part of the property in the hands of the receiver, pending the receivership, and taxes which may be levied on the property have been assessed against it and the receiver has incurred general expenses in the course of the receivership, and creditors furnishing supplies to the receiver have acquired liens therefor on the property in the hands of the receiver, under section 2963 of the Code, and the court is called upon to disburse the fund arising from the sale of the property of the corporation when there is not sufficient to pay all in full, it should be applied as follows: (1) To the payment of court costs, including compensation to the receiver and his counsel, leviable taxes, and seaman wages, if any, due from the receiver; (2) To the payment of liens perfected under section 2963 of the Code for supplies furnished the receiver; (3) To the payment *pari passu* of the general creditors for general expenses incurred by the receiver, and (4) To the payment, ratably, of taxes assessed, but not leviable, and the lien creditors above mentioned.

Appeals from decrees of the Hustings Court of the city of Petersburg. Suit was brought by Roper and Groner, trustees, against Phillips Line and Others, for the appoint-

ment of a receiver. From the ruling of the court on exceptions to a master's report, two appeals were taken, one by the Jackson Coal and Coke Co. and Others, and the other by Seward & Roper, creditors and stockholders.

*Reversed.*

The opinion states the case.

In Jackson Coal and Coke Co. case:

*Hughes & Little, Willcox & Willcox, Harry E. McCoy* and *W. McK. Woodhouse,* for the appellants.

*Carl H. Davis, Richard B. Davis, Charles E. Plummer* and *Wm. B. McIlwaine,* for the appellees.

In Seward & Roper case:

*Carl H. Davis* and *Richard B. Davis,* for the appellants.

*Hughes & Little, Willcox & Willcox, Harry E. McCoy* and *W. McK. Woodhouse,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The appeal in each of these cases in taken from a decree of the Hustings Court of the city of Petersburg, entered therein on April 5, 1911, ruling upon exceptions to a master commissioner's report, filed in the chancery cause then pending under the style of *Roper & Groner, Trustees,* v. *Phillips Line et als.,* and though separate and distinct questions are presented in each appeal, they were argued together, and will, therefore, be disposed of in this opinion.

The Phillips Line was organized as a corporation in 1908 for the purpose of taking over the property, fran-

chises, etc., of the Petersburg, Newport News and Norfolk Steamboat Company, a transportation company theretofore operating a line of boats on the James and Appomattox rivers between Richmond, Petersburg and Norfolk, and the conduct of these operations was continued by the Phillips Line until January, 1910, on which date it made an assignment of its property, etc., to Bartlett Roper, Jr., and J. A. C. Groner, trustees, for the benefit of the company's creditors. On the same day the said trustees filed the original bill in the above-named cases, asking for the appointment of a receiver to take charge of and operate the property of the defendant company, in order to preserve it from dissipation by reason of litigation then pending or threatened, and to endeavor to sell the property, franchises, etc., of the company as a going concern. On the day of the filing of said bill the hustings court entered its decree, taking possession and control of the defendant company's property, etc., and appointing said trustees, Roper and Groner, as receivers to take, hold and operate the property under the orders of the court. At this time the assets of the company consisted of the steamers "Pokanoket" and "Aurora," a certain interest in some wharf property, and a freight and passenger business between the points named; while its liabilities amounted to $59,-795.36, consisting of capital stock, outstanding bonds and overdue interest thereon, taxes, operating expenses, including repairs, note due for wharf property secured by deed of trust, and an alleged debt due to one T. M. Davis.

A few days before said bill was filed and the receivers in the cause appointed, the Newport News Shipbuilding and Dry Dock Company had filed its libel in the United States district court at Norfolk, Va., against the steamer "Pokanoket" for $9,520, due it for repairs on the steamer, and the firm of Smith & McCoy had intervened in the proceeding for a certain amount due them for repairs on her; so

that at the time of the assignment made by the Phillips Line and the appointment of the receivers, the steamer "Pokanoket" was in the hands of the United States marshal by virtue of the attachment issued in the libel proceedings, and in order to obtain possession of the steamer the receivers arranged with J. W. Seward, LeRoy Roper and The Petersburg Investment Corporation, who were the holders of the bonds of the company, to execute or to guarantee a surety for the execution of a bond for the release of the steamer, upon the condition, as the reports of the receivers to the court state, that "if Seward, LeRoy Roper and the investment corporation be compelled, in accordance with the terms of said bond, to pay to the Newport News Shipbuilding and Dry Dock Company the amount due to it by the Phillips Line, as aforesaid, they, the said bondholders, will be held by the court to occupy the same position, and to have the same priority of payment out of the proceeds of the sale of the said 'Pokanoket' as is now held by the said Newport News Shipbuilding and Dry Dock Company."

The reports of the receivers just referred to were received by the court, approved, and the proposed arrangement for having the "Pokanoket" released to the receivers was sanctioned and authorized by the court's decrees, entered, respectively, on February 1 and 5, 1910. The last-named decree, after setting forth the proposed arrangement to have the "Pokanoket" released to the receivers, specifically provided that "if the said bondholders, or such of them as execute or cause to be executed said bond, are called on to pay, and do pay, to the person filing said libel proceedings, or to any person who may intervene in said proceedings, by petition or otherwise, any amount, then the said bondholders shall be entitled to and shall have against said steamer 'Pokanoket,' and shall be subrogated to all of the rights, claims and liens against said

steamer 'Pokanoket' as would be had under the laws of the United States, or the State of Virginia, by the persons whose claims are so paid, in case the said bond were not executed, and in case the said libel proceedings were allowed to proceed to a sale of the said steamer 'Pokanoket,' and the said bondholders paying such claims shall be protected as fully as if they held said claims and were enforcing same in admiralty proceedings." The provision of the decree of February 5 is practically the same as the provision contained in the decree of February 1, 1910, for the carrying out of the plan to have the 'Pokanoket" released to the receivers.

Upon the release of the "Pokanoket," as provided in said decree, she was turned over to the receivers, who operated her, together with the "Aurora," until some time in October, 1910, when, having been unable to dispose of the property, etc., of the company as a going concern, and the receivers having become largely in debt to various persons on account of their operations, the business was brought to a close, the "Pokanoket" being sold in the early part of November following for $13,000, and the "Aurora," together with some other property of the company, in the early part of 1911 for $1,050, the entire assets thus realized being $14,050.

While negotiations looking to the sale of the "Pokanoket" were pending, the proposed purchasers thereof ascertaining that the appellants, in the first of these appeals, and other supply and repair creditors of the receivers, claimed to have liens upon the "Pokanoket" for supplies furnished to, or repairs made upon, the steamer, declined to pay the purchase price therefor agreed on, unless the receivers would arrange with such claimants to release their claims against the "Pokanoket;" whereupon, an agreement was reached between the receivers and said creditors that the purchase price of the steamer,

$13,000, should be deposited to the credit of the court in the cause, to stand in lieu of the steamer until the creditors' liens thereon asserted were finally adjusted.

The matter then came before a master commissioner of the court, to whom the cause had been referred, and appellants, Jackson Coal and Coke Company *et als.,* upon notice, appeared before the commissioner and asserted their right to a lien, under their said stipulation, against the proceeds of the sale of the steamer, by virtue of section 2963 of the Code, as well as the general maritime law, for the amount due them, respectively, claiming, by virtue of their lien, a priority of payment out of the said fund. This contention was in the main sustained by the commissioner, who reported that said appellants were entitled to the same priority against the proceeds of the sale of the steamer over the general creditors of the receivers and of the company which they would have had if their liens had been adjudicated in an admiralty proceeding against the steamer, and gave them a preference next after the payment of "seamen's wages." The commissioner also reported that all the money received by the receivers during any month was disbursed during the same period; that the receivers were behind in their accounts as early as April 1, 1910, and that the majority of the indebedness due by them was contracted prior to July 15, 1910.

It appears that, pursuant to the guarantee bond executed by LeRoy Roper, Seward and the investment company, in order to procure the release of the "Pokanoket" to the receivers from the attachment lien thereon in the aforesaid libel proceedings, LeRoy Roper and Seward were compelled to pay $4,406.91 each, and they made claim before the commissioner that they were entitled to priority of payment out of the proceeds of sale of the "Pokanoket" for the amount so due them, respectively, over debts due to creditors of the receivers, and that they were entitled to

this preference by reason of the said decrees of the court of February 1 and 5, 1910; but with respect to this debt due to LeRoy Roper and Seward, the commissioner reported that it was really in the nature of a debt due by the defendant company, and placed it in the fourth class of debts reported by him, which practically defeated the collection of any part of it, to which ruling of the commissioner Roper and Seward excepted.

There were also other and various exceptions to the commissioner's report, and on a hearing upon the report and the exceptions thereto, the court overruled the exceptions filed as to the priority of payment of taxes, the exceptions of Roper and Seward, and overruled the report of the commissioner as to the method reported by him for the distribution of the fund under the control of the court, and entered its decree distributing the fund, first, to the payment of court costs, including allowances to the receivers and their counsel; second, to the payment of taxes; third, to the payment, *pari passu,* of the claims of the creditors of the receivers on account of their operation of the Phillips Line; and, fourth, "to the payment of the guarantors on the bond given for the release of the 'Pokanoket.'  *  *  * "

It appears also that objection was made in due time by the creditors to any allowance being made to the receivers and their counsel, and a motion was made to surcharge the receivers' accounts, which objection and motion were also overruled.

Had the method of distribution of the fund reported by the commissioner been sustained by the trial court, appellants in the first-named appeal would have had no cause of complaint, as they would have received their money in full, but under the method of distribution adopted by the court's decree, they can only receive a part thereof. Accordingly, they assign as error the overruling of so much

of the report of the commissioner as sustained their liens, and awarded payment thereof out of the proceeds of sale of the steamers, etc., next after payment of seamen's wages, and in entering the decree directing payment of these and other claims of the creditors *pari passu.*

The second assignment of error is practically the same as the first, and the disposition of one will dispose of the other, the gravamen of the exceptions being that the court erred in not directing the payment of said appellants' claims in full.

The third assignment of error is to the ruling of the court making allowance to the receivers and their counsel.

The fourth assignment of error relates to the provision in the decree for the payment of taxes and giving them priority over the creditors of the receivers; and the fifth assignment of error is to the action of the court in overruling appellants' motion to surcharge the accounts of the receivers.

Section 2963 of the Code, under which the supply and repair creditors of the receivers claim preference in the distribution of the fund under the control of the court, provides: "If any person has any claim against the master or owner of any steamboat, or other vessel, raft or river boat, or against any steamboat or other vessel, raft or river craft, found within the jurisdiction of this State, for materials or supplies furnished or provided, or for work done for, in or upon the same, * * * such person shall have a lien upon such steamboat or other vessel, raft or river craft for such materials or supplies furnished, work done or services rendered * * * "

Unquestionably the lien provided by the statute is ordinarily a right of property in the vessel, raft or river craft, existing independently of possession, and arises as soon as the contract for the materials, supplies, etc., is made, and may be enforced against the boat, raft or river craft in

the hands of the purchasers thereof, and such liens have been enfórced so frequently in the admiralty court that citation of authority is unnecessary; but can such a lien be enforced under the facts and circumstances of this case to the exclusion of court costs, including allowances to the receivers, and of the lien of claimants in the aforesaid libel proceedings in the Federal court, to whose rights appellants, Seward and LeRoy Roper, were subrogated by the decrees of the trial court in this cause?

The receivers were, of course, acting under the orders of the court, and it is very true that the plan to operate the business of the insolvent company, the Phillips Line, was not pursued to a successful result by the receivers, so as to bring about a sale of the property, etc., as a going concern, as was designed; but the receivers are not charged with bad faith in the conduct of the business, and the only complaint is that they did not act wisely and failed to make certain reports to the court, which they should have made. In these circumstances the receivers were entitled to an allowance of reasonable compensation for their services, and *a fortiori* cannot be charged with the expenses of operation. The allowances to the receivers and to their counsel is not, as we understand appellants' contention, considered unreasonable, and, therefore, the court did not err in directing their payment as a part of the court costs incurred in marshalling and disposing of the property of the insolvent company, whose property came into the hands of the receivers and under the control of the court.

With respect to that part of the decree appealed from, which directed the payment of taxes due from the Phillips Line, and its predecessor in title, to the State of Virginia and the city of Petersburg, out of the fund under the control of the court, and giving the taxes priority of payment over the creditors of the receivers, the court erred, except as to the taxes for the year 1910. The property upon which

4

these taxes were assessed was wholly personal, and no effort appears to have been made, certainly as to the years prior to 1910, either by the Auditor of the State or by the city of Petersburg, to collect the taxes until the property was placed in the hands of the receivers in this cause and an account of debts against the Phillips Line ordered. The State had a right, under sections 604-623 of the Code, for one year from the date on which the taxes in her favor were assessed, to levy upon the property assessed with the taxes, which right was not exercised; and it appears that the city of Petersburg had a right of distress against the property assessed with taxes in its favor, which the city might have exercised before the taxes were returned delinquent, or the property upon which they were assessed had passed into the hands of subsequent purchasers, and thereby secured a lien therefor, but these rights were never exercised.

Under these circumstances, neither the State nor the city had a lien upon the property of the Phillips Line when it went into the hands of the receivers for the taxes due them, respectively, and, therefore, the position of the State and city was no better than that of the general creditors of the company, and they were not entitled to share in the proceeds of sale of the company's property, except as to the amount of taxes due them (the State and the city), respectively, for the year 1910, assessed against and due from the receivers.

With respect to the fifth assignment of error in the petition for the first-named appeal, we deem it only necessary to say that the motion to surcharge the accounts of the receivers was accompanied by no data upon which the trial court could have ascertained, with any degree of certainty, what items or matters in the accounts of the receivers, which had been audited and approved by the court, were complained of, and, therefore, the motion to surcharge the

accounts was too vague and indefinite to warrant the court in entertaining the motion, especially when the motion was accompanied with a disclaimer of any intention to impute bad faith on the part of the receivers.

This brings us to a consideration of the first and second assignments of error by the appellants in the first-named of these appeals, upon which the contention is made that the trial court should have directed the payment of their respective claims in full, there being a sufficient fund under the control of the court, and in this connection it is necessary to consider the question presented on the second of these appeals, which is, whether or not the court erred in denying the appellants, Seward and Roper, the priority claimed by them in the distribution of the proceeds of sale of the steamer "Pokanoket," which was practically to deny them the payment of any part of their claim, amounting, approximately, to $9,000.

To sustain their contention, the supply and repair creditors of the receivers, appellants in the first of these appeals, rely upon the decision of this court, construing section 2963 of the Code, *supra*, in *People's Bank* v. *Va. Textile Co.*, 104 Va. 34, 51 S. E. 155, 7 Ann. Cas. 583; while the appellants, Seward and Roper, rely upon the decrees of the trial court of February 1 and 5, 1910, under which it is claimed that the court made, with said appellants, an agreement that, if they guaranteed the bond to be executed by the receivers of the court for the purpose of releasing the "Pokanoket" from the lien of the libel proceedings instituted in the United States District Court at Norfolk, Va., and pending at the time of the institution of this suit, and appellants were called on to pay, and did pay, any amount on account of the said guarantee, they should be repaid by the court such amount out of the proceeds of sale of the "Pokanoket" when the boat was sold by the court.

The case of *Bank* v. *Textile Co., supra,* was decided upon sound principles of equity and justice, well established by the authorities, and declared to be the policy in this State by statute—section 2963 of the Code. In that case the court said: "The general rule is conceded, that the appointment of a receiver does not affect vested rights or interests of third persons in property which is the subject of the receivership, or disarrange the order of priority of liens. But this principle is subject to an exception as firmly established as the rule itself, namely, that where the receiver is appointed, at the instance of and for the benefit of lien creditors, and charged with the duty of operating the property for their advantage, all proper charges, expenses and liabilities incurred incident to the receivership are held to be a first charge upon not only the current earnings, but also the *corpus* of the estate."

The bill in that case was filed by the bank for the ultimate purpose of enforcing the lien of a deed of trust upon the plant of the defendant, the Virginia Textile Company, to secure coupon bonds to the amount of $25,000, all of which were held by the plaintiff, which bill, filed in open court, made defendants thereto the textile company and the trustees in the deed of trust, who were also attorneys for the plaintiff, and one of whom was the president of the bank. After setting out the indebtedness of the textile company, default in the payment of certain of its notes and installments of interest on the coupon bonds; and that loss and damage would result from a scramble among creditors for priority, and a wasting of the assets by a multiplicity of suits, the bill prayed for the appointment of a receiver to continue the business of the company, under the direction of the court, etc., and the truth of all the allegations of the bill was admitted by the defendants in their answer, and they united in the bill's prayer. Accordingly, a decree was passed by the court, appointing

the president of the plaintiff bank receiver, with direction to take possession of all the company's property, etc.

In the case now in judgment, the Phillips Line was admittedly insolvent, a libel had been sued out in the United States District Court at Norfolk against the "Pokanoket," one of the company's steamboats, and thereupon the assignment of January 27, 1910, by the company of all of its assets to Bartlett Roper, Jr., and J. A. C. Groner was executed, and in turn, on the same day, these trustees filed their bill asking for the appointment of a receiver to take charge of and operate the property, in order to preserve the company's assets from dissipation  *  *  *  and endeavor to sell it as a going concern.  Leroy Roper and Seward, appellants, were bondholders of the Phillips Line. Seward was the vice-president of the company, and signed the answer of the company, uniting in the prayer of said bill of the trustees for the receivership.  He also executed for and on behalf of the company the deed of assignment to Roper and Groner, trustees; the said Roper and Groner being, on the same day, on their own motion, appointed receivers, the attorney for the receivers also acting as the attorney for Roper and Seward.

The two decrees of the court, to which we have adverted, were based upon two reports filed by the receivers for the purpose of obtaining said decrees, the first of which reports, filed on January 31, 1910, contains the following language:  "The said receivers further report that Joseph W. Seward, LeRoy Roper and Petersburg Investment Corporation are the holders of the $15,000 of notes or bonds of said Phillips Line, holding, respectively, six, six and three of the said bonds.  In order to have the said steamer 'Pokanoket' released from the lien of said libel, the said bondholders have agreed that the said bond of $12,000 shall be executed, and that they will be responsible therefor in the proportions in which they hold bonds of the company,

to-wit, in the proportion of 6/15, 6/15 and 3/15, respectively, as more fully appears from exhibit A, herewith filed. Upon the condition, however, that if they be compelled, in accordance with the terms of said bond, to pay to the Newport News Shipbuilding and Dry Dock Company the amount due to it by the said Phillips Line, as aforesaid, they, the said bondholders, will be held by the court to occupy the same position, and to have the same priority of payment out of the sale of the said 'Pokanoket' as is now had by the said Newport News Shipbuilding and Dry Dock Company."

The receivers' second report practically repeats what is just quoted from the first, upon which the decree of February 5, 1910, was based, and contains this statement: "Your receivers are of opinion that it is necessary to the best interest of all parties concerned, and particularly of the bondholders of said Phillips Line, that the said steamer 'Pokanoket' be released and turned over to your reecivers, so that she may be put into operation between Petersburg and Norfolk, and in this way hold the business which she had before the libel proceedings were instituted."

It seems to us that it plainly appears from the record that while the receivership was nominally applied for by Roper and Groner, as trustees under the deed of assignment, it was at the instance and for the benefit of the bondholders, Roper and Seward. Both the deed of assignment and the bill show that parties holding claims upon which libel proceedings could be, and were, instituted, were vigorously protecting their rights, and that the bondholders next in right of priority would absorb the remaining assets of the company; therefore, it was apprehended that the libel proceedings would be so far-reaching and expensive as to defeat the bonds, and the assignment was made and the receivership asked for on the same day, in order that the bondholders might thereby be protected and

benefited by obtaining control of the boats and operating them through the receivers.

As said by the commissioner in his report in the cause: "In volunteering to take the position of the Newport News Shipbuilding and Dry Dock Company and other petitioning creditors in the libel proceedings, and to deliver the steamer 'Pokanoket' into the possession of this court for the purpose of operation, they (LeRoy Roper and Seward) impliedly, if not expressly, agreed to all proper expenses incurred in operating the boats, and held out to the supply men, repair men, seamen and all others who dealt with the receivers, the *corpus* of the estate, as well as its earnings, as a basis of credit sought and given."

In these circumstances appellants, Seward and Roper, cannot, in equity and good conscience, be heard to say that, while they have invited all that has been done in the proceedings to wind up the business of the Phillips Line and to protect its property, for the ultimate benefit of the bondholders of the company, and that this business should be carried on in the interest of all concerned, *particularly of the bondholders,* and impliedly, if not expressly, agreed that all proper expenses incurred in the effort to carry on the business should be "a charge upon the *corpus* of the estate, as well as its earnings," still, although the business carried on particularly for their benefit has been unsuccessful, they are to be preferred in the distribution of the assets of the insolvent company over the supply men and repair men who dealt with the receivers charged with the conduct of the business in their interest, and whose debts were necessarily contracted by the receivers.

"If the court was without power in such cases to charge the expenses of the receivership on the property, the innocent officer of the court would have to bear the loss. If such was the law of receivership, no one could be found to accept the important office." *Huling* v. *Jones,* 63 W. Va. 696, 60 S. E. 874.

In *Kneeland* v. *American Loan & Trust Co.,* 136 U. S. 98, 34 L. Ed. 379, 10 Sup. Ct. 950, the court said: "A court which appoints a receiver acquires, by virtue of the appointment, certain rights and assumes certain obligations, and the expenses which the court creates in discharge of those obligations are burdens necessarily on the property taken possession of, and this irrespective of the question, who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership." See also *Va. & Ala. Coal Co.* v. *Railroad & Banking Co.,* 170 U. S. 356, 42 L. Ed. 1068, 18 Sup. Ct. 657; *International Tr. Co.* v. *U. S. Coal Co.,* 27 Col. 286, 60 Pac. 621, 83 Am. St. Rep. 59, and note.

The established rule recognized in the cases just cited is fully sanctioned and approved in *People's Bank* v. *Textile Co., supra,* and is in strict accord, when applied to a case like the one under consideration, with just and equitable principles and the general maritime law, as well as with the policy and terms of our own statutes.

With respect to the authorities upon which appellants, Seward and Roper, base their contention, it is only necessary for us to say that, so far as we have been able to examine them, they do not apply to a case where the controversy is between creditors of the receivers for operating expenses and holders of liens arising antecedent to the receivership, but only recognize the right of the court to take property subject to liens, and the duty of the court to recognize the existence of such liens undisturbed in their order by reason of the receivership.

We are of opinion that the lower court should have directed the distribution of the fund under its control in this case as follows: First, to the payment of court costs, including allowances to the receivers and their counsel; taxes due the State of Virginia and city of Petersburg assessed against the property of the Phillips Line for the

year 1910, and seamen's wages due from the receivers; second, to the payment of the liens of appellants perfected, under section 2963 of the Code, for supplies furnished the receivers; third, to the payment, *pari passu*, of the claims of the general creditors for general expenses incurred by the receivers; and, fourth, to the payment, ratably, of the taxes due the State and the city of Petersburg, assessed against the property of the Phillips Line's predecessor in title for the years 1907, 1908 and 1909, and the claim of Seward and Roper, guarantors on the bond of the receivers given for the release of the "Pokanoket," under the decrees of the court entered in the cause February 1 and February 5, 1910.

The decree appealed from is reversed and annulled, and the cause remanded for further proceedings in the cause to be had in accordance with this opinion.

*Reversed.*