Jones,J
In his effort to have the nisi prius court hold The proceeds of the mortgage property *131 until the determination of his unadjudicated claim for damages for personal injuries Winterbottom adopted the precautionary measures of filing his petition of intervention in the original foreclosure action and of bringing an independent action in equity seeking the same relief. 1 The questions here involved are presented in two aspects: first, whether or not the corpus of real estate encumbered by mortgage liens may be subordinated to a claim for damages against the receiver of that property resulting from his control and operation thereof; second, what effect, if any, the action of a lienholder has when he procures a receivership not only for the purpose of conservation and custody of the property but also for its control and business management^
/ The law in relation to the receivership of railways has gradually developed until it is now uniformly held that receivers of that class of corporations may incur obligations of the character here involved, which must be paid out of the current earnings of the corporation, and, in lieu of any deficiency therein, out of the corpus of the property itself. But, even in receiverships of that character, Mr. Justice Brewer, in the frequently cited case of Kneeland v. American Loan & Trust Co., 136 U. S., 89, 98, said: “It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea, that the chancellor, in the exercise of his equitable powers, has unlimited dis *132 cretion in this matter of the displacement of vested liens.”
And it is held as to railway liens that current operating expenses of a railroad, including damages for personal injuries, may be preferred over the railway mortgage liens. This legal principle is attributed to the fact that these great corporations not only assume to derive their franchises and public functions from the state but are of such character as to be affected by public interest to an extent that their operation may be required in proper cases, notwithstanding the objections of stockholders and mortgagees, and irrespective of the question whether the latter may have been notified at the time of the original appointment of the receiver. But does the same rule apply to corporations of a private character which are not affected with such public interest ? This feature was clearly recognized by the justice of the United States supreme court who rendered the opinion in the case of Wood v. Guarantee Trust & Safe Deposit Co., 128 U. S., 416, when, in speaking of the case of Fosdick v. Schall, 99 U. S., 235, he said: “The case lays great emphasis on the consideration that a railroad is a peculiar property, of a public nature, and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only point it out.”
Since rendition of the opinion in the latter case the lower courts of federal jurisdiction have uniformly held that the principles that apply to railway corporations involving the' subordination of *133 vested liens do not apply to individuals and private corporations where no such public interest attaches. Farmers’ Loan & Trust Co. v. Grape Creek Coal Co., 50 Fed. Rep., 481; Fidelity Ins., Trust & S. D. Co. v. Roanoke Iron Co., 68 Fed. Rep., 623, and Hanna v. State Trust Co., 70 Fed. Rep., 2.
This principle has also been adopted by the state courts generally, which have had the question under consideration. Cooper v. Central Trust Co., 81 Md., 559, 591; International Trust Co. v. United Coal Co., 27 Colo., 246, 254; Hotchkiss v. Makeel, Receiver, 87 Ill. App., 623, affirmed 190 Ill., 311, and Raht v. Attrill, 106 N. Y., 423, 436.
; The rule is generally recognized that' the cost of the custody and preservation of the property in the hands of the court, as well as the taxes, are of course payable out of the corpus of the realty encumbered, either in the case of individuals or private corporations, and are considered part of the expenses and costs of suit, j In such cases, when the liens were incurred and accepted by the mortgagees such costs were impliedly assented to when the mortgages were taken. Further, with relation to railway mortgage liens, when the lienholder obtained that class of security he did so with knowledge of the ■ fact that he was acquiring it ■ upon quasi-public corporate property which might be operated under the sanction of the court. This principle, 'however, does not affect the vested rights existing between mortgagees and individuals or corporations of a private nature. If it did, then any claimant of an insolvent concern, or a partner upon dissolution of partnership, could on his own *134 motion divest the security without consent of the lienholder, and possibly without any financial risk to himself.
[ However, there is another phase to this case which is controlling. The record discloses that the trustee of the bondholders at the time it filed its petition for foreclosure affirmatively asked for a receiver, and that on its motion one was appointed, not only to conserve, but to manage the property. If the receiver was authorized to manage this property as a going concern, it was at the instance and on the motion of the mortgage lienholder. In his operation of the property, it develops from the record, damage ensued by reason of that operation. This damage when adjudicated, being incidental to the management, became part of the expense of the administration by the court. It does not now lie in the mouth of the lienee, who secured this operation by its express request, to deny the resultant expense accruing therefrom. While the rule of extending protection to mortgagees obtains in ordinary cases, it does not apply where personal ' injuries have been sustained because of the negligence of a receiver whom the lienee had expressly demanded for the business management of the property. We think this principle is amply supported by reported cases in state and federal jurisdictions. People’s Nat. Bank v. Va. Textile Co., 104 Va., 34; Metropolitan Trust Co. v. Tonawanda V. & C. Rd. Co., 103 N. Y., 245; St. Louis Southwestern Ry. Co. v. Holbrook, 73 Fed. Rep., 112; Doe v. Northwestern Coal & Trans. Co., 78 Fed. Rep., 62, and Kneeland v. Trust Co., supra.
*135 \ Any equitable consideration existing in this case between- the mortgagees, or between them and the fund procured from liability insurance, need not now be determined. These questions are left to the consideration of the court of first instance. All that is necessary for us to do at this time is to decide whether Winterbottom’s pleading stated a cause of action which required the court to hold the proceeds arising from the sale of property until the determination of his suit for personal injuries. We hold that this right exists! and the sole remaining question is: What was'ms mode of procedure?
As disclosed by the record Winter bottom not only filed his motion, and his petition for intervention, vacation and modification of decree in the foreclosure suit, but also just prior to filing the intervention petition filed an independent suit in equity seeking the vacation and modification of the decree of distribution made at the term just preceding.
The pleading for intervention in the foreclosure suit was the proper method of procedure, since full and adequate relief could be obtained in that action. The property, or the proceeds therefrom, will be in the hands of the court, together with all the parties interested in the distribution of the proceeds after sale. By its order of May 17, 1916, the court decreed that the costs of suit should first be paid. While this expense of operation cannot technically be termed costs, still it is a part of the administration expense of the court. “Damages for injuries to persons or property during the receivership, caused by the torts of the receiver’s agents and employees, are classed as a part of the operating *136 expense of the corporation.” (34 Cyc., 354.) While the order of distribution may have been an adjudication of the existing rights between the parties, it in no wise affected this expense of the court which accrued after that order. It cannot be claimed that if the expense had been an ordinary administration expense of the receiver the court would not have had inherent power to protect itself by the payment of the receiver’s indebtedness. (34 Cyc., 307.) While the petition for intervention was filed at a succeeding term of the court, it was filed at a time when the court still had charge of the property, and before final distribution of the proceeds arising from its sale. This sale was not confirmed until August 8, 1916. Prior to that time, to-wit, on July 25, 1916, the receiver and the court were not only advised that this claim existed, but that the same was being prosecuted in a court of law, under an order of court in the foreclosure suit authorizing such action.
In cases Nos. 15698 and 15706 the judgment of the court of appeals reversing that of the common pleas in the independent equity suit is reversed, and that of the common pleas court affirmed.
In case No. 15723 the judgments of the court of appeals and the common pleas court are reversed, and the case remanded to the court of common pleas, with instructions to overrule the demurrer to the petition for intervention.

Judgments reversed.

■ Nichols, C. J., Wanamaker, Matthias, Johnson and Donahue, JJ., concur.