BIRD et al. v. CITY OF RICHMOND.

In re AINSLIE CARRIAGE CO.

(Circuit Court of Appeals, Fourth Circuit. · March 14, 1917.)

No. 1461.

1. BANKRUPTCY ⊜⟶198—PREFERENCES—LANDLORD'S LIEN.

A landlord's lien, perfected less than four months before the tenant's bankruptcy by distress warrant proceedings under Code Va. 1904, §§ 2787, 2790–2792, which are declaratory of the common-law right of distress for rent, is not a levy or a lien obtained through legal proceedings, within Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 (Comp. St. 1913, § 9651), providing that all levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent within four months prior to the filing of a petition against him, shall be deemed null and void in case he is adjudged a bankrupt, since it is an inchoate right, which dates from the time the tenant places the goods on the premises and may be perfected at any time by summary proceedings, and its effect is not to permit one general creditor to obtain a preference over another merely as the result of a race of diligence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–316.]

2. BANKRUPTCY ⊜⟶346—PAYMENT OF CLAIMS—PRIORITY—TAXES—"DIVIDENDS."

Bankr. Act, § 64b (Comp. St. 1913, § 9648), providing that the court shall order the trustee to pay all taxes in advance of the payment of dividends to creditors, does not authorize the payment of taxes out of the fund derived from the sale of goods subject to a landlord's lien, under a distress warrant, in view of section 67d, providing that liens given in good faith for a present consideration shall to the extent of such consideration not be affected by the act, since "dividends," as used in the Bankruptcy Act, applies only to claims of general unsecured creditors, and not to secured creditors, except as to the amount of the claim in excess of the security (quoting Words and Phrases, Second Series, Dividend).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535.]

3. MUNICIPAL CORPORATIONS ⊜⟶978(3)—TAXATION—LIEN—PERSONAL PROPERTY TAXES—CHARTER PROVISION.

Within Richmond City Charter, § · 73, providing that all goods and chattels may be distrained and sold for taxes assessed and due thereon, and no deed or trust or mortgage thereon shall prevent the distress and sale, the expression "taxes due and assessed thereon" limits the lien for a personal property tax to the particular property on which the assessment was made for the current year, so that the city cannot distrain for taxes for previous years on a stock of carriages and materials which is constantly changing, and thereby displace a landlord's lien thereon, without proof that the goods were the same as those on which the taxes for those previous years had been assessed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2108.]

4. COURTS ⊜⟶366(6)—RULES OF DECISION—DECISION OF STATE COURT—CONSTRUCTION OF TAXATION.

The decision of the highest court of the state construing statutes authorizing distress for personal property taxes is conclusive on the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 961.]

Woods, Circuit Judge, dissenting.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

240 F.—35

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Eastern District of Virginia, at Richmond, in Bankruptcy; Edmund Waddill, Jr., Judge.

In the matter of the Ainslie Carriage Company, bankrupt. Petition by Elizabeth W. Bird and others against the City of Richmond to superintend and revise in matter of law proceedings of the District Court whereby the city was given a preference for the payment of its taxes over the claim of petitioners for a landlord's lien. Reversed.

James E. Cannon, of Richmond, Va., for petitioners.

George Wayne Anderson, Asst. City. Atty., of Richmond, Va., for respondent.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is a controversy between the landlords of the bankrupt, Ainslie Carriage Company, claiming a lien upon the bankrupt's assets by virtue of a distress warrant for rent, levied on November 1, 1909, and the city of Richmond, claiming priority over the landlords by virtue of certain bills for delinquent personal taxes assessed against the bankrupt for the years 1907, 1908, and 1909, and for current taxes for the year 1910, being the year in which the adjudication in bankruptcy was made.

It is conceded that the landlords levied a distress warrant on the 1st day of November, 1909, and that the city of Richmond made no effort to levy for its delinquent taxes for the years 1907, 1908, and 1909, although given the express power to do so by section 73 of its charter in the following language:

"All goods and chattels, wheresoever found, may be distrained and sold for taxes assessed and due thereon. * * *"

It appears from the answer of the city of Richmond that the ordinances of the city provide that the taxes for each year are payable on or before June 30th, and, under chapter 14, section 7, of Richmond City Code, it is provided that, if all taxes be not paid before September 1st, the tax collector shall distrain, except where one-half has been paid prior to June 30th. The situation of the parties on November 1, 1909, may be summarized as follows:

The landlords, in pursuance of chapter 127 of the Code of Virginia, had distrained for rent to the extent of $2,929.57, at the rate of $2,000 per annum. Section 2787 of the Code of Virginia provides that rent of every kind may be recovered by distress on action, section 2790 that rent may be distrained for within 5 years from the time it becomes due, and section 2791 that distress may be levied on any goods of the lessee, or his assignee, or undertenant, found on the premises, or which have been removed therefrom not more than 30 days. Under the provisions of its charter the city of Richmond had a right to distrain for taxes due in 1907 on the 1st day of September, 1907, and at any time thereafter; likewise for its 1908 taxes on the 1st day of September, 1908, or any moment thereafter, and for its 1909 taxes

it had the same right, all of which continued until the time the land-lords made their levy.

It is contended by the landlords that inasmuch as they exercised their right of distress, and that the city did not exercise its right to levy and collect, that they acquired a lien upon the bankrupt's assets superior to that of the city. On the other hand, the city claims that its inchoate and unexercised right of distraint gives it a priority over the landlords, and, furthermore, under the Bankruptcy Act (section 64a), the taxes are given priority over all other claims.

It appears that the adjudication in bankruptcy was made on the 3d day of February, 1910, or less than 4 months after the levy of the landlords, and one of the contentions of the city is that therefore, un-der section 67f of the Bankruptcy Act, the landlords were not enti-tled to any lien at all. The referee made a report under date of July 14, 1910, in which he found that the landlords were entitled to par-ticipate in the distribution of the fund arising from the sale of the bankrupt's assets ahead of the claim of the city of Richmond and of the commonwealth of Virginia for franchise tax and registration fee, but recited an agreement by which final determination of the question should await the decision of the Supreme Court of Appeals of Virginia as to whether, under like circumstances in a case before it, the city and state did in fact have a lien for their taxes without making a levy.

Under date of March 12, 1913, the referee made another report, in which he stated that the case in the Virginia appellate court had gone off on a question of jurisdiction, and in which he proceeded to hold that, under the proper construction of section 67f of the Bankruptcy Act, the landlords were not entitled to a lien, and that being, therefore, relegated to the class of general creditors, the city and state were preferred in the distribution of assets by virtue of section 64 of the Bankruptcy Act. To this report the landlords filed exceptions, which were treated by the court below as a petition to review such report, and the court, by an order entered on the 14th day of April, 1914, reversed the ruling of the referee and held that the landlords did have a valid lien for their rent under the Bankruptcy Act, and that such lien took priority over the claims of the state of Virginia and of the city of Richmond.

On April 21, 1916, the court below, having previously granted a rehearing on application of the city of Richmond, handed down an opinion reversing its former ruling, and holding that the city's claim for taxes should take priority over the landlords' lien, and carried this ruling into effect by the entry of an order on June 19, 1916, which or-der we are now asked to review.

We are not unmindful of the importance of the questions involved in this controversy. That the state and its municipalities should be clothed with ample power to assess and collect taxes promptly and with as little delay as possible is conceded. In this suit, as appears from the statement of facts, a controversy has arisen which involves on the one hand the character of a lien to which a landlord is entitled under the laws of the state of Virginia, and on the other the character of a

lien for taxes to which the city of Richmond is entitled by virtue of its charter.

[1] The petitioners rest their "claims upon those statutes of Virginia which are merely declaratory of the common-law principle of distress for rent in arrear which obtains in one form or another throughout the entire English-speaking world." Section 2787 of the Code of Virginia is pertinent to this case, and reaffirms the common law, to wit:

"Rent of every kind may be recovered by distress or action."

Section 2790 also provides:

"Rent may be distrained for within five years from the time it becomes due, and not afterwards, whether the lease be ended or not."

Section 2791 is in the following language:

"The distress may be levied on any goods of the lessee, or his assignee, or under tenant, found on the premises, or which may have been removed therefrom not more than thirty days. If the goods of such lessee, assignee, or under tenant, when carried on the premises, are subject to a lien, which is valid against his creditors, his interest only in such goods shall be liable to such distress. If any lien be created thereon while they are on the leased premises, that shall be liable to distress, but for not more than one year's rent, whether it shall have accrued before or after the creation of the lien. No other goods shall be liable to distress than such as are declared to be so liable in this section."

In this instance it appears that the landlords proceeded to enforce their statutory rights and to perfect the inchoate lien, which they had by virtue of their lease, by levying a distress warrant for 18 months' rent, which gave them a lien subject to the provisions of section 2792, in which it is provided that:

"Neither this or the preceding section shall affect any lien for taxes, levies, or militia fines."

The referee who passed upon this question in his second report held that this lien was of no effect because of section 67f of the Bankruptcy Act, that part which is germane being in the following language:

"All levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition against him shall be deemed null and void in case he is adjudged a bankrupt. * * *"

The framers of the Bankruptcy Act, in employing the word "levies," etc., obviously had reference to writs of execution, fi. fa. garnishment, etc. In other words, this section is limited to liens obtained through legal proceedings. This, we think, easily distinguishes the liens contemplated by section 67f from the landlords' lien, which is not, in any sense of the word, a lien obtained through legal proceedings. Collier on Bankruptcy, at page 966, in referring to levies under section 67f, says:

"A lien acquired by a levy under a landlord's distress warrant is not obtained through legal proceedings within the meaning of this subsection."

A landlord's lien is contradistinguished from the other class of liens to which we have referred, in that it is inchoate from the moment the lease is executed, and may be made perfect at any moment by distress, a remedy which is summary in its character.

The Bankruptcy Act is intended to prevent one general creditor from obtaining an advantage over another. In other words, it was the intention of the Congress in the enactment of this law that, where one becomes unable, by misfortune or otherwise, to meet his obligations, to preserve the status of his estate, so that there might be an equal distribution of his assets between all his creditors, subject to the claims of lien creditors whose standing is fixed by the statute; in other words, to prevent preferences and secure a fair and impartial distribution of the bankrupt's estate among his creditors, having, as we have stated, due regard to the valid liens of any of his secured creditors.

We do not think there is anything in the statute to authorize the contention that a landlord should be treated as a general creditor, and thus deprive him of the lien which is guaranteed by the statutes to which we have referred. Remington on Bankruptcy, § 1160, in referring to this point, says:

"A landlord's lien for rent, or right of priority on distribution, is not impaired by the bankruptcy act. But the subject is complicated by the fact that landlords are frequently also given priority by state law, upon distribution of an insolvent estate, regardless of lien, and that this priority is preserved in bankruptcy by section 64b."

The referee in the report to which we have referred cites the case of West Side Paper Co., 159 Fed. 241, 20 Am. Bankr. Rep. 289, in support of his contention. In that case the District Court held that a levy of a distress warrant for rent made within four months was invalid. However, this case was carried to the Circuit Court of Appeals for the Third Circuit, where the judgment of the lower court was reversed. 162 Fed. 110, 89 C. C. A. 110, 15 Ann. Cas. 384. That court, in referring to this phase of the question said:

"Distress for rent in arrear is one of the most ancient as well as 'one of the most efficient of the landlord's remedies for the collection of rent.' It is in most of our states, as it was at common law, a right sui generis, belonging to the landlord whenever the right of landlord and tenant existed. It appears to have been abolished in a few of the states, and in most of them its exercise has been regulated by statute. Its essential characteristics are, however, for the most part, the same as existed at common law. * * * The right to distrain or levy upon all the goods upon the demised premises, whether those of the tenant or of a stranger, arises the moment the relation of landlord and tenant is established. It is a right in the nature of a lien, rather than a lien, until the goods are actually distrained under a landlord's warrant. * * * No suit or proceeding at law, whether in personam or in rem, in the proper sense of those words, was necessary for the assertion of this right. It belongs to that small category of personal rights, the assertion of which has always been independent of legal procedure, of which the right to abate a nuisance, under certain circumstances, and the right to distrain cattle damage feasant, are examples. While there is no specific lien, except on the goods actually distrained under the landlord's warrant, all the goods on the demised premises are to be considered as being under a quasi pledge, which gives superiority to the specific lien established by the distraint. Such a lien is in no sense 'obtained through legal proceedings.' Nor is it within the spirit of the bank-

rupt law in this regard, as evidenced by other provisions thereof, as well as that of 67f, above quoted."

Also the case of In re Burns (D. C.) 175 Fed. 633, is very much in point.

This question was also passed upon in the case of In re Robinson & Smith, 154 Fed. 343, 83 C. C. A. 121. In that case a distress warrant was levied just two days before the petition in bankruptcy was filed. The learned judge who heard the case, after citing subsections "c" and "f" of section 67, then stated the claim of the appellants as follows:

"That the seizure in distress is, within these paragraphs, in the nature of a suit or proceeding in attachment, and having been begun within the four months before bankruptcy is annulled by the adjudication of bankruptcy. We cannot concur in this view. The whole question is one of interpretation of the Bankrupt Act—the policy of that act respecting the recognition of liens in the distribution of bankrupt estates. Paragraphs 'c' and 'f,' quoted, were meant, in our judgment, to relate only to those actions or proceedings taken by creditors, who having no existing lien or right of lien resting in existing contract, entered into in good faith, seek to obtain preference by being first in a race of diligence. * * * But the lien obtained by the distress warrant under the kind of lease involved in this case is not the result of a race of diligence. Under the lease * * * the right of lien was created when the lease was executed, and the tenant entered upon possession of the premises—a right put wholly, at that time, within the control of the landlord and maturing the moment the landlord chose to mature it. And though it did not actually attach * * * until within four months of the bankruptcy, it was the kind of lien, it seems to us, that section 67d was intended to preserve; for unquestionably as between the parties to the lease it was a lien, not simply because the distress warrant was actually levied, but because, by contract between them, the levy of the distress warrant was authorized."

There are a number of other cases wherein the Court of Appeals in the other circuits have taken the same view of this matter. In the case of In re Emslie, 102 Fed. 291, 42 C. C. A. 350, where a mechanic's lien was filed within four months preceding the adjudication in bankruptcy the Circuit Court of Appeals for the Second Circuit held that it was protected by section 67d. The court in that case in referring to this point said:

"There are no equitable considerations in favor of the general creditors of a debtor which should defeat a mechanic's lien. Every creditor dealing with the debtor does so with the knowledge that those who are furnishing labor and materials for the building can, if they choose, acquire a priority of payment over other creditors. Statutes giving such liens are designed to enable mechanics and material men to rely upon the security of the building itself, without looking to the responsibility of the owner. The justice and expediency of giving such claims priority over the debts of general creditors is manifested in the legislation of the several states. We cannot believe that it was the intention of Congress to put them upon the footing of the liens particularly mentioned in section 67. The question of the validity of such liens was considered by the Circuit Court of Appeals for the Seventh Circuit. In re Kerby-Dennis Co., 36 C. C. A. 677, 95 Fed. 116. In considering the provisions of section 67 the court used this language: 'We cannot indulge the presumption that Congress intended to avoid a lien secured by the act of labor, and preserved and continued in force only when legal proceedings are instituted within a specified time. Such a construction would avoid all mechanic's liens, and all the liens of laborers, which the laws of various states have for years sought to protect and to prefer.' We agree with the opinion of that court that the terms of section 67 do not invalidate such a lien."

See In re Yoke Vitrified Brick Co. (D. C.) 180 Fed. 235.

In the case of In re West Norfolk (D. C.) 112 Fed. 767, Waddill, District Judge, in referring to the statute which provides for a supply lien, said:

";The time of furnishing the supplies is the period as of which the material man is given a right of lien. The right to claim the lien arises under this section, and may be enforced at any time after the supplies are furnished, but may be lost by failure to comply with some provisions of the act giving the right. The only requirement is that the lien shall be filed 'within ninety days after the last item of the bill becomes due and payable.' If the claim is filed within that time, the lien secured relates to the time the supplies were furnished."

Likewise, under the Virginia statute, the lien dates from the time the tenant takes the lease and places his goods upon the premises; such right is inchoate, and continues as such until a distress warrant is executed on the property. In other words, the landlord's right is in the nature of a lien, and to enforce which he has only to comply with the provisions of the statute that authorizes distraint, and when the distraint is executed it relates, as it was said in the case just quoted, to the date when the tenancy began.

[2] It is insisted that section 64a of the Bankruptcy Act (Comp. St. 1913, § 9648) gives the claim of the city priority over that of the landlords. The section in question is in the following language:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

It should be borne in mind that the landlords do not invoke this section, but place their claim upon the ground that they are lien creditors. Section 67d reads as follows:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this act."

There is nothing contained in the foregoing that could be construed so as to affect the lien of the landlords. Section 64a has no reference to lien creditors, but is intended to apply only to general creditors, and should be read in connection with subsection "b" relating to debts that are to be paid in full, to wit: Costs of preserving the estate; filing fees in involuntary cases; cost of administration; wages; debts entitled to priority by the laws of any State or the United States. Counsel for respondent, among other things, say:

"It will be observed that the language of section 64a is that the taxes are to be paid prior to 'dividends to creditors.' There can be no controversy over their priority to unsecured creditors, but it is claimed by petitioners that, having secured a lien by a distress levy prior to the petition and adjudication, they are entitled to be paid in full in preference to the taxes, upon the theory that they do not get a dividend and that dividends are only paid to unsecured creditors. That this is erroneous has been held in the cases of In re Muhl-

hauser, 9 Am. Bankr. Rep. 81, and In re Barber [D. C.] 97 Fed. 547. In the last-named case the meaning of the word 'dividend' is discussed at length. * * *"

While it is true the cases of In re Muhlhauser and In re Barber, supra, sustain the contention of respondent, nevertheless the great weight of authority is to the contrary. The term as employed in the Bankruptcy Act is well defined in the case of Hawthorne v. Hendrie & Bolthoff Mfg. & Supply Co., 50 Colo. 342, 116 Pac. 122. This definition is also to be found in Words and Phrases, vol. 2, page 102 (Second Series), as follows:

"Under Bankr. Act July 1, 1898, c. 541, § 65a, 30 Stat. 563 [Comp. St. 1913, § 9649], providing that dividends of an equal per centum shall be declared and paid on all allowed claims except such as have priority or are secured, the word 'dividends' as used in the bankruptcy act applies only to claims of general unsecured creditors and not to secured creditors, except as to the amount of the claim in excess of the security."

In the case of In re Utt, 105 Fed. 754, 45 C. C. A. 32, 5 Am. Bankr. Rep. 383, the Circuit Court of Appeals for the Seventh Circuit, in passing upon this point, said:

"The point in dispute is: What is the meaning of 'dividends,' as the word is used in these provisions? The question has been considered in a number of cases by the District Courts. In re Ft. Wayne Electric Corp. (D. C.) 96 Fed. 803, 3 Am. Bankr. Rep. 186; [Id.] 94 Fed. 109; In re Fielding (D. C.) 3 Am. Bankr. Rep. 135, 96 Fed. 800; In re Barber (D. C.) 3 Am. Bankr. Rep. 306, 97 Fed. 547; In re Sabine, 1 Am. Bankr. Rep. 321. We agree with the conclusion declared in the first two of these cases that sums to be paid upon secured claims or other claims entitled to priority of payment are not 'dividends' upon which the trustee or referee may receive a commission. This is made clear by other provisions of the statute. By sections 56b and 57e (Comp. St. 1913, §§ 9640, 9641) creditors holding claims which are secured or have priority can vote at creditors' meetings, or their claims be counted in computing either the number of creditors or the amount of their claims, only when the claims exceed the value of the securities or priorities, and then only for the excess. They are treated as creditors only for the unsecured excess. Section 65a declares that 'dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured.' This, if not strictly speaking a definition of the word 'dividends,' is equivalent to a declaration that in this respect claims having priority and secured claims are upon the same footing. The opinion in the Barber Case, supra, recognizes this construction, but makes a distinction against secured creditors who invoke the action of the bankruptcy court, and through the action of that court alone have their security converted into a fund in the hands of the trustee. 'If a secured creditor' it is said, 'refrains from asking or invoking the aid of the court of bankruptcy to enable him, through its officers, and its exercise of jurisdiction, to turn his securities into cash, then, although the court, for the benefit of the unsecured creditors, should use its equitable power to the extent of selling the incumbered property free and discharged of the incumbrance, assuming to care for the equitable rights of the secured creditor in its disposition of the moneys arising from the sale, there would seem to be reason for holding that the moneys going to the secured creditor under such circumstances only came into the case incidentally as the result of the effort to realize and obtain other money for the unsecured creditors, and that it should not be regarded as any dividend, or charged with any commissions.' * * * We find no warrant for this distinction in the terms of the statute."

Also Collier on Bankruptcy (10th Ed.) p. 16, in referring to In re Barber, supra, among other things, says:

"It may be doubted whether this is correct since under section 65a dividends can only be paid on claims which are neither secured nor entitled to priority."

It is obvious that the word "dividend" as employed in section 64a of the Bankruptcy Act was intended to apply to all claims except such as are secured or have priority.

In the case of New Jersey v. Lovell, 179 Fed. 321, 102 C. C. A. 505, 31 L. R. A. (N. S.) 988, it was contended that the taxes due the state should take priority over costs, including those in preserving the bankrupt's estate after filing the petition. The Circuit Court of Appeals for the Third Circuit, after quoting subsections "a" and "b" said:

"Now, while the relative order in which subdivisions 'a' and 'b' are placed is not happy, and indeed tends to mislead, yet the general intent of the section is clear. In subdivision 'b' we find the general scheme of awarding priority in advance of dividend creditors. That subdivision makes provision for paying such costs, fees, and liens as are therein provided, and if there are no outstanding taxes the fund is then paid to creditors. But before paying creditors, subdivision 'a' intervenes and makes provision for what, if omitted, has often proved a hardship, if not indeed an abuse in the settlement of decedent and insolvent estates, viz., delay in payment of taxes. Tax collectors whose powers to distrain lapsed when the estate passed into the custody of the law, or who were left to come in as general creditors, were subjected to trying delays. Obviously subdivision 'a' meant that this delay should not occur, and therefore provided that, 'in advance of payments of dividends to creditors,' the court shall order the trustee to pay 'all taxes legally due and owing by the bankrupt,' * * * and to prevent delay from questions concerning such taxes, it provided, 'in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court.' And yet in case the court had to take testimony, or order a reference to determine the legality of such tax, the adjudged tax would, under the construction here contended for, absorb the whole fund and leave unpaid the agency by which its payment was effected. Now whether the 'creditors' referred to in the phrase, 'in advance of the payment of dividends to creditors,' places the payment of taxes ahead of dividend creditors alone, or places it also ahead of those creditors who under subdivisions 4 and 5 are paid in full, is a question not before us. It suffices to say that on the question that is before us, namely, whether the taxes of a state are, under clause 'a' given priority 'over the actual and necessary cost of preserving the estate subsequent to the filing of the petition,' we are clear they are not."

The state of New Jersey in that case applied for a writ of certiorari to the Supreme Court of the United States, which was denied.

This court in the case of Mills v. Virginia-Carolina Lumber Co., 164 Fed. 168, 90 C. C. A. 154, 21 L. R. A. (N. S.) 901, in passing upon this question said:

"Aside from the mere cost incident to the proof of the claim, we do not see how this creditor should be required to pay any part of the costs of the administration of this bankrupt's estate. The lumber company had its claim secured by deed in trust on the property of the bankrupt and it was entitled to have its claim paid in full, provided the property so conveyed would bring enough. The trustee in bankruptcy elected to sell this property and has the proceeds of the sale in hand. The lumber company, in our opinion, is entitled to have of the proceeds of the sale sufficient to pay its debt and interest, provided there is enough. If the property did not bring enough to pay the debt and interest in full, then the lumber company is entitled to have the whole of the proceeds. In other words, this creditor, which has simply come into a bankrupt court and established a debt that is a lien upon specific property of the bankrupt, should not be charged, so as to reduce the security, by making

the fund arising from such specific property liable for the costs of the general administration of the bankrupt's estate."

We do not deem it necessary to extend this discussion further than to say that there are numerous cases in support of the rule which we have announced, notably among them being In re Williams Estate, 156 Fed. 934, 84 C. C. A. 434; In re Howard (D. C.) 207 Fed. 402; In re Zehner (D. C.) 193 Fed. 789; In re Halsey (D. C.) 175 Fed. 825.

[3] We will next consider the question as to whether under the laws of Virginia, including the charter of the city of Richmond, the respondent is entitled to priority over the claim of the landlords in the absence of a levy pursuant to the authority granted by the Charter of the city. Section 73 of the charter of the city of Richmond is in the following language:

"All goods and chattels wheresoever found may be distrained and sold for taxes assessed and due thereon, and no deed, or trust, or mortgage upon goods or chattels shall prevent the same from being distrained and sold for taxes assessed against the grantor in such deed while such goods and chattels remain in the grantor's possession, nor shall any such deed prevent the goods and chattels from being distrained and sold for taxes assessed thereon, no matter in whose possession they may be found."

The court below in referring to this section said that:

"There is no limitation apparently upon the city's right of distraint for its past and present taxes."

This section is undoubtedly broad in its scope, and a casual reading of the same is calculated to give one the impression that a lien for taxes is given priority over all liens of whatsoever character. However, a careful analysis of the same leads us to the conclusion that the words, "for taxes due thereon," are in the nature of a limitation confining the lien thus given to the personal property on which the assessment is made for the current year. If this be the correct interpretation, then the state would only have a right to levy on such property as it could show was owned and in the possession of the tenant at the time the levy was made.

Under the charter of the city of Richmond complete and summary power is granted by which any taxes then due may be collected. In this instance it appears that notwithstanding the fact that the tax collector, who had ample authority to collect the taxes assessed and due for each year, took no steps to collect the same for a period of three years. Can it be possible that, in a case where a third party acquires a lien upon the property on which assessment has been made, he is to be deprived of the right thus acquired for years other than the current year upon which the assessment is made? It seems to us that a fair interpretation of this would be that the city has a right, independent of deeds of trust, mortgages, or otherwise, to distrain and collect taxes upon such property for the year for which such assessment is made and where such property can be identified. It would be manifestly unfair in a case like the one at bar to permit the city, after it has neglected to collect the taxes by distraint and sale of the property for the years in which the levy is made, to thereafter displace the landlords' lien in favor of the city. We think that in order for the

city to reach this property by levy it would have been necessary for it to have shown that the goods and chattels in the possession of the trustee were the same goods and chattels which the bankrupt had and on which taxes were assessed for the previous years. From the very nature of things, a stock of material and carriages, like a stock of goods, is constantly changing, being diminished and replenished daily by sales and purchases, and there is no evidence to show that the landlords had in their possession in 1910 any of the material or carriages upon which the assessment was made for 1907, 1908, and 1909. The city having failed to establish this fact, in the absence of such proof, it thereby lost the right to levy upon the goods of the bankrupt for any year anterior to 1910.

The case of Taylor v. Sutherlin-Meade Co., 107 Va. 787, 60 S. E. 132, is cited by counsel for petitioners in support of the contention that it is the duty of the court, before distributing the funds under its control, to provide for the payment of taxes and levies due by the bankrupt. It should be borne in mind that the question of delinquent taxes was not involved in that case. There the court expressly said that the appointment of a receiver had prevented a levy. From this expression we must infer that a receiver had been appointed before the taxes became due and before the city had the right to levy upon the property in question. Therefore there is quite a distinction between that case and the case at bar. There the court speaks of the city being denied an opportunity to collect its taxes by levy. In this instance the city had an opportunity to collect the taxes but utterly failed to avail itself of the summary remedy afforded by the provisions of the law which authorized the assessment and collection of taxes.

The Supreme Court of Virginia passed upon this question in the case of Jackson Coal Co. v. Phillips Line, 114 Va. 40, 75 S. E. 681. In that case the court of first instance gave the state and the city of Petersburg priority for delinquent taxes over lien as well as general creditors of the insolvent steamship line, which was in the hands of receivers. The court, in passing upon this phase of the question, said:

"With respect to that part of the decree appealed from, which directed the payment of taxes due from the Phillips Line, and its predecessor in title, to the state of Virginia and the city of Petersburg, out of the fund under the control of the court, and giving the taxes priority of payment over the creditors of the receivers, the court erred, except as to the taxes for the year 1910. The property upon which these taxes were assessed was wholly personal, and no effort appears to have been made, certainly as to the years prior to 1910, either by the auditor of the state or by the city of Petersburg, to collect the taxes until the property was placed in the hands of the receivers in this cause and an account of debts against the Phillips Line ordered. The state had a right, under sections 604–623 of the Code, for one year from the date on which the taxes in her favor were assessed, to levy upon the property assessed with the taxes, which right was not exercised; and it appears that the city of Petersburg had a right of distress against the property assessed with taxes in its favor, which the city might have exercised before the taxes were returned delinquent, or the property upon which they were assessed had passed into the hands of subsequent purchasers, and thereby secured a lien therefor, but these rights were never exercised. Under these circumstances, neither the state nor the city had a lien upon the property of the Phillips Line when it went into the hands of the receivers for the taxes due them, respectively, and therefore the position of the state and city was no better than that of

the general creditors of the company, and they were not entitled to share in the proceeds of sale of the company's property, except as to the amount of taxes due them [the state and city], respectively, for the year 1910, assessed against * * * the receivers."

[4] This decision, coming as it does from the highest court of the state, clearly indicates the rights of the city under the facts of this case, and, we think, is conclusive. Taylor v. Secor, 92 U. S. 575, 23 L. Ed. 663; Lewis v. Monson, 151 U. S. 545, 14 Sup. Ct. 424, 38 L. Ed. 265. The Supreme Court of the United States, in speaking of the weight to be given to the decisions of the highest court of a state bearing upon local questions of this character, in the case of Bailey v. Maguire, 89 U. S. (22 Wall.) 215, 22 L. Ed. 850, employed the following language:

"The whole subject we have discussed recently came before the Supreme Court of Missouri in the case of Pacific Railroad Co. v. Cass County, 53 Mo. 17. The assessor of Cass county had levied taxes for both state and county purposes on the property of the company in the county, and the question was whether these levies were authorized. The court held that the taxes for county purposes were rightfully assessed, under the general revenue laws, but that the taxes for state purposes were unauthorized, because section 12 of the act of 1852 had been repealed either by an express provision of a subsequent law or by necessary implication, and, being in force, state taxes could only be collected in the way pointed out in that section. As it is the peculiar province of the highest court of a state to decide whether or not the method pursued in the assessment and collection of taxes is in conformity with the law of the state, this decision is controlling."

From what we have said it follows that the city and state had the right to levy and collect the taxes for the year 1910, its tax collector having used due diligence as to the collection of taxes for that year. However, as to the years 1907, 1908, and 1909 we are of opinion that the lien of the landlords is entitled to priority over that of the city, and that the court below was in error as respects this phase of the case.

We have carefully examined the cases relied upon by the city, but in the light of the authorities we have cited bearing upon the Bankruptcy Act, as well as the case of Jackson Coal Co. v. Phillips Line, supra, we are of opinion that the judgment of the lower court should be reversed, and the case remanded, with instructions for further proceedings in accordance with the views herein expressed.

Reversed.

WOODS, Circuit Judge (dissenting). The Ainslie Carriage Company was adjudicated a bankrupt on February 3, 1910. In the distribution of the funds derived from the sale of its property a contest arose between the city of Richmond, claiming arrears of taxes, and Elizabeth M. Bird, Loulie M. Nolting and Charles E. Whitlock, claiming rent due them as owners of the premises occupied for business purposes by the carriage company. The question to be decided is whether the District Court was right in holding that the taxes should be paid in preference to the rent. The facts are:

On November 1, 1909, the petitioners levied a distress warrant on the goods and chattels found on the premises leased from them by the carriage company for $2,929.57 arrears of rent. Before sale could

be made the chancery court of the city of Richmond took charge of all the assets of the carriage company, and was administering them at the time of the adjudication in bankruptcy, when all the assets were turned over to the District Court for the Eastern District of Virginia. Upon the estate coming into the hands of the bankruptcy court, the petitioners proved their debt for rent, and claimed the proceeds of sale by virtue of the lien acquired by levy of the distress warrant under sections 2791 and 2792 of Virginia Code. At the time the distress warrant was issued, taxes on the property were due to the city of Richmond for the years 1907, 1908, and 1909, and after it passed into the hands of the court of chancery the taxes for 1910 became due, the whole amounting to $657. The landlords conceded that the taxes for the year 1910 should be paid in preference to their claim, but asserted their lien to be superior to that of the city for the delinquent taxes of 1907, 1908, and 1909. There is no claim on the part of the city that the landlords' lien was invalid under section 67f of the Bankruptcy Act, because perfected by distress within four months of bankruptcy. In re Emslie, 102 Fed. 291, 42 C. C. A. 350; In re Robinson & Smith, 154 Fed. 343, 83 C. C. A. 121; In re West Side Paper Co., 162 Fed. 110, 89 C. C. A. 110, 15 Ann. Cas. 384.

We consider first the effect of the Virginia statutes. Section 2792 relating to distress for rent puts this limitation upon the effect of the levy of the warrant:

"Neither this nor the preceding section shall affect any lien for taxes, levies, or militia fines."

It will be observed that the statute does not expressly create a lien in favor of the landlord by virtue of the distress for rent, but does so only by necessary implication. By an implication still stronger the following section of the charter of the city of Richmond confers a lien for taxes on personal property:

"Sec. 73. All goods and chattels wheresoever found may be distrained and sold for taxes assessed and due thereon, and no deed of trust or mortgage upon goods or chattels shall prevent the same from being distrained and sold for taxes assessed against the grantor in such deed while such goods and chattels remain in the grantor's possession, nor shall any such deed prevent the goods and chattels from being distrained and sold for taxes thereon, no matter in whose possession they may be found."

The right to distrain and sell goods and chattels for taxes "wheresoever found" means that they may be taken if found in the hands of one holding under the landlords' right or any other claim whatever. It seems to me that this is the meaning of the law beyond all doubt, but if there were any doubt it should be resolved in favor of the collection of the public revenue. Indeed, this construction seems to be conceded, for it is admitted that the rent claim must yield to the taxes for the year 1910; and it was the construction adopted by the Supreme Court of Virginia in Jackson v. Phillips Line, 114 Va. 40, 75 S. E. 681, as to the taxes for the current year due the city of Petersburg.

In the case cited it was decided, however, that the right of the state to levy for taxes expired at the end of one year from the date at which the taxes were assessed, and "that the city of Petersburg had a right

of distress against the property assessed with taxes in its favor, which the city might have exercised before the taxes were returned delinquent, or the property upon which they were assessed had passed into the hands of subsequent purchasers, and thereby have secured a lien therefor, but these rights were never exercised." The charter of the city of Richmond contains no such limitations as to taxes after they are returned delinquent, but, on the contrary, provides by section 51 that the officer charged with the collection of delinquent taxes "shall have the same power to collect by the same means and processes all bills, assessments and accounts delivered to him as are conferred by the city charter upon the collector of taxes." The case before us is thus clearly distinguished from Jackson v. Phillips Line, and falls within the general principles so well stated in Taylor v. Sutherlin, etc., Co., 107 Va. 797, 60 S. E. 132. Hence it follows that there was the same right of distress for the collection of taxes due the city of Richmond, and delinquent for the years 1907, 1908, and 1909, as for the current taxes of 1910.

If this reasoning be sound, the petitioner's claim to have a lien under the Virginia statute superior to the claim of the city of Richmond for taxes must rest upon this proposition: After the levy of the distress warrant for rent on behalf of the petitioners, the city might nevertheless have levied under a distress warrant for taxes and thus displaced to the extent of the taxes the lien of the landlords; but since the court took the property after the lien of the landlord had attached to it by distress, and thus made impossible a levy on behalf of the city, the right of the city to acquire the superior lien or preference was forever lost. It would indeed be a curious result for a court to seize property in the interest of general creditors, and thus forbid the city to exercise its statutory right of perfecting its inchoate lien by levy and then penalize it for not exercising the right. In such circumstances the court necessarily deals with the city as if it had actually done that which the court incidentally in the interest of others had prevented it from doing. The matter is thus disposed of by the Supreme Court, quoting with approval Greeley v. Provident Savings Bank, 98 Mo. 458, 11 S. W. 980:

"It may be conceded that the state did not have an express lien upon the assets that went into the hands of the receiver, but it had a right paramount to other creditors, to be paid out of those assets—a right which it could have enforced through its revenue officers by the summary process of distress—but for the fact that the property and assets of its debtor had passed into the custody of its courts; whose duty it was in the administration and distribution of those assets to respect that paramount right, upon the untrammelled exercise of which depends the power to protect the very fund being distributed, and to maintain the existence of the tribunal engaged in distributing it; and to make no order for the distribution of assets in custodia legis except in subordination to that right." In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; Taylor v. Sutherlin, etc., Co., 107 Va. 797, 60 S. E. 132.

St. Va. 1897–98, p. 824 (V. C. § 492b), forbids any court to distribute or dispose of funds or other property without first paying the taxes thereon.

The argument is presented that section 73 of the charter of the city of Richmond authorizes a levy on property only for taxes due thereon—that is, on the identical property assessed, and that the property in the hands of the court is not the property upon which the taxes were assessed. The argument falls for several reasons: First. The petition before us and the entire record refer throughout to the property levied on for rent as identical with that upon which the taxes were in arrears for 1907, 1908, and 1909; and the court should not assume that it is a shifting stock of goods. Second. Even if it be assumed without proof that the property was a stock of merchandise changing in its items in the course of trade, surely it should not be assumed further that all of the goods in stock when the taxes were assessed had been sold in the course of trade. The entire property realized in the hands of the court $3,343.02. The aggregate of the city taxes was $657. I do not perceive upon what ground it can be assumed that the entire stock had been purchased since the taxes were assessed in 1907, 1908, and 1909, or that of the total stock, $3,343.02, found on hand there was not $657 worth on hand at the date of the assessment. Third. But even if it be assumed that the property was a shifting stock of goods and that all of its items had changed in the course of business, the argument is still unsound. Of necessity the law considers a merchant's stock a definite entity upon which the taxes are assessed and remaining the same aggregate entity until the taxes are paid, notwithstanding the changing of the items in the regular and anticipated course of trade. Surely it cannot be the law that if a dealer's stock of dry goods or groceries are assessed for taxes in January and in the course of business the dealer sells all of the particular goods then on hand, replacing them with others, the city would be unable to enforce its right by levy on the stock because the items of the stock had been changed.

There is no force in the suggestion that the city lost any right conferred either by the federal or state statute by the mere procrastination of its officers. Robertson v. Sichel, 127 U. S. 507, 8 Sup. Ct. 1286, 32 L. Ed. 203; Powell v. Richmond, 94 Va. 79, 26 S. E. 389. It is no hardship that a preference is given for taxes for all may ascertain if they have been paid by inquiry at the proper office. It thus seems clear that if the Bankruptcy Act were silent on the subject, the statutes and decisions of Virginia require all taxes due the city to be paid in preference to the distress for rent.

Let it be assumed, however contrary to this conclusion, that the view most favorable to the petitioners is correct, namely, that the landlords acquired by their distress for rent a first lien on the property under the statute law of Virginia, which could not have been displaced by the levy of a distress warrant for the delinquent city taxes. Nevertheless, under the bankruptcy statute the court is required in accordance with the general equity rule to pay the taxes before distribution of the proceeds of the sale to the petitioners or any other lien creditors. The following sections seem to make this very clear:

"Sec. 64a. The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." Comp. St. 1913, § 9648.

"Sec. 57l. Whenever a claim shall have been reconsidered and rejected, in whole or in part, upon which a dividend has been paid, the trustee may recover from the creditor the amount of the dividend received upon the claim if rejected in whole, or the proportional part thereof if rejected only in part." Comp. St. 1913, § 9641.

"Sec. 65a. Dividends of an equal per centum shall be declared and paid on all allowed claims, except such as have priority or are secured." Comp. St. 1913, § 9649.

The requirement put upon the court itself by section 64a to pay taxes in advance of the payment of dividends is not limited in its application to dividends to unsecured creditors. Taxes are not debts, and the statute means that they are to be paid in preference to all debts. The statute by section 57 undertakes to provide for the proof of secured as well as unsecured claims, and for the rights of all classes of creditors; and in subdivision "l" of that section the word "dividend" must be referred to the distribution of the assets to all classes before referred to in the section, that is, secured or unsecured, and the recovery of dividends improperly paid to any creditor of any class mentioned, secured or unsecured.

Section 65a clearly means that dividends of equal per cent. shall be paid on *all* allowed claims, and that dividends on secured claims shall be paid in view of their priority. It could hardly be denied that the pro rata distribution of the proceeds of the sale of the property of a bankrupt corporation to the holders of its mortgage bonds would be the payment of dividends to them. To restrict the meaning of "dividend" to payments made to unsecured creditors would not only distort the act, but would mean that the act had made no provision whatever for distribution of assets in the hands of the court belonging to secured creditors of the same class or different classes. The word "dividend" is not one of the words limited in its meaning by a definition contained in the act itself, and hence it has its usual well-known meaning, per centum of payments made in the distribution of funds in the hands of the court to all creditors whose claims are before it. It is true it is more frequently used in the act in connection with the distribution to unsecured creditors; but that is not controlling, for the same word or phrase often has a different meaning in the same statute according to its association. American S. Co. v. Commissioners, 224 U. S. 491, 32 Sup. Ct. 553, 56 L. Ed. 856. The universally recognized rule of practice is that the courts, even when there is no statute on the subject, pay the taxes on property from the proceeds of its sale before paying dividends on debts of lien creditors, and that too without respect to whether taxes have been made a lien by statute or not. In section 64a of the Bankruptcy Act Congress has by statute enjoined on the courts the observance of this rule.

In support of this conclusion it seems only necessary to refer to In re Tyler, 149 U. S. 184, 13 Sup. Ct. 785, 37 L. Ed. 689; New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284; 2 Remington on Bankruptcy (2d Ed.) §§ 2141–2144, and cases cited. I think the judgment of the District Court should be affirmed.